## CUTTERS et al. *v.* BAKER et al.

Consignees, who accept a consignment, are bound to obey the directions of the consignor, made at a time when the property was under his control, as to the appropriation of the proceeds.

Where a factor, by whom merchandise was received with directions to apply its proceeds to the payment of a bill, pays the bill before selling the property, he will be entitled, as factor, to a privilege on the merchandise, for his reimbursement.

Where a factor, to whom property had been consigned, with directions to apply the proceeds to the payment of certain creditors of the principal, agrees with the latter to apply the proceeds to the payment of their claims, the appropriation cannot be affected by a subsequent attachment by a creditor of the principal ; the property or its proceeds being beyond the control of the latter.

Factors have a privilege entitling them to be paid by preference to an attaching creditor, out of the proceeds of goods consigned to them, for any advance made thereon, or for any balance of account accrued anterior to the attachment, though not resulting from advances on the goods. C. C. 3214. Stat. 17 Feb. 1841.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge, J. Fellowes, Johnson & Co.* are appellants in this case. The facts are fully stated in the opinion, *infrá*.

*Peyton* and *I. W. Smith*, for the plaintiffs. *Fraser*, for the appellants. *J. Dunlap*, for the defendant, *Baker*. *Mott*, for *Bennett*.

The judgment of the court was pronounced by

SLIDELL, J.    *Cutters* and *Phelps* are the holders of three bills of exchange drawn by *Baker* on *Fellowes, Johnson & Co.*, on the 27th August, 1845. These bills are not in the usual form, requiring an absolute payment by the drawees, but their tenor is, " on the receipt of funds belonging to me, pay to the order of *Cutters & Phelps*, within sixty days from date." *Cutters & Phelps* sent these bills for collection to their agents at New Orleans. In their letter they say : "We will thank you to have them accepted by *F. J. & Co.*, and hold them for payment, and as fast as money is paid on them forward it to us. Mr. *Baker* says he is sending them a lot of barrels to sell for him, with directions to pay on these drafts as fast as they realise the money ; and their acceptance of our drafts is not to bind them—only to pay over as fast as they collect money. We presume they will not object to accepting the drafts on these terms. If they should object and will not accept them, ask them to agree to dispose of the funds of *Baker*, as they come into their hands, in accordance with the drafts."

The agent of plaintiffs accordingly presented the drafts to *Fellowes. Johnson* &c *Co.*, who declined to accept, and stated that they had no advice from the drawer, and that he had no authority to draw. A few days after this, *F. J. & Co.* received a letter from *Baker*, under date of 29th August, 1845, in which he says : "I have taken the liberty to draw sundry bills on your house, *predicated on a shipment of barrels*, which will leave Paducah about the 10th or 15th September next. Of course I do not expect you to accept these bills, (without you please to do so,) but merely to say that you are advised that funds will be in your hands to meet them at maturity.

Some days subsequently the agent of the plaintiffs called again with the bills, when *F. J. & Co.* exhibited to him *Baker's* letter. There is some discrepancy in the testimony as to the precise purport of what passed between them; but, after a careful consideration of all the testimony, we consider the substance and effect of it to be, that *F. J. & Co.* promised to hold the proceeds of the barrels that might be shipped in conformity to *Baker's* letter of advice, applicable towards the payment of all the bills drawn against such contemplated shipments. To the holders of the other bills the same promise was made as to the plaintiffs.

We consider these facts as amounting to an agreement between *F. J. & Co.* and the holders of these bills, that the proceeds of such barrels as should thereafter come to their hands from *Baker*, under the letter of advice of 29th August, should be appropriated towards these bills, and that *F. J. & Co.* could not thereafter appropriate the proceeds of that merchandise to other purposes. But the plaintiffs have no right to hold *F. J. & Co.* absolutely answerable as acceptors. They have incurred only a qualified liability, that is, for the *pro rata* of the proceeds.

Several shipments of barrels were subsequently received by *F. J. & Co.*, and being received generally they were fairly applicable to the benefit of the bill holders. But there was one shipment of barrels for which they cannot be so charged. In November, 1845, *F. J. & Co.* received from *Baker* a letter enclosing receipts of certain parties at Plaquemine and Donaldsonville, for 1045 barrels, placed in their hands by *Baker*. In this letter *Baker* directs *F. J. & Co.* to advertise these lots, and when sold to apply the proceeds first to the payment of a draft held by *Story* for $700, which seems to have been based upon those consignments, and afterwards to the bills above mentioned, giving a preference to the plaintiffs' bills. At the time when *Baker* wrote this letter, these two consignments were under his own control, and the receipts in his own possession. Consequently he had a right to direct the appropriation of their proceeds, and *F. J. & Co.* in accepting the consignments, were bound to obey his orders. The promise made by *F. J. & Co.* to the plaintiffs cannot therefore be considered as comprehending that property, *F. J. & Co.* paid the *Story* bill, and charged it against the proceeds of the other consignments of barrels. This they had no right to do. But having paid the money to *Story*, they are as factors entitled to a privilege upon the 1045 barrels for their reimbursement, when they shall be sold, which had not been done when this cause was tried in the court below.

Besides the barrels, some small shipments of other merchandise were made by *Baker* to the defendants. The drafts held by the plaintiffs and the other bill holders standing in the same category, were not based upon the shipments other than of the barrels, and are not covered by the agreement to appropriate proceeds made by *F. J. & Co.* They had a right to appropriate the proceeds of these other shipments to their account with *Baker*, for advances made before the levy of attachment by plaintiffs, and *Bennett*, another creditor,

CUTTERS
*v.*
BAKER.

Under the view above expressed, the plaintiffs are entitled to receive from *F. J. & Co.* towards payment of their bills their *pro rata* of proceeds of shipments of barrels, to wit, $      . If the consignments of 1045 barrels should realise more than enough to reimburse *F. J. & Co.* what may be uncovered of the $700 paid to *Story*, and charges pertaining to those consignments, the plaintiffs will be entitled to the benefit of such surplus.

There is another creditor whose rights remain to be considered. One *Bennett*, subsequent to the agreement between *F. J. & Co.* and the bill holders, brought suit by attachment against *Baker*, and garnisheed *F. J. & Co.* We consider the rights of the bill holders as superior to those of this attaching creditor. The agreement made between the bill holders and *F. J. & Co.*, in conformity to *Baker's* letter of advice, anterior to the attachment, placed that merchandise and its proceeds beyond the control of *Baker*. *Bennett* could only obtain, by his attachment, a right secondary to the bill holders, and also to the factors' privilege for advances and balance of account accrued anterior to the attachment. See the cases of *Urie* v. *Stevens*, 2 Rob. 252. *Armor* v. *Cockburn*, 4 Mart. N. S. 667. *Babcock* v. *Malbie*, 7 Ib. N. S. 139. Civil Code, art. 3214. Act of 17 February, 1841, p. 21. If we suppose that, after paying the bill holders and the factors, there could be any thing left for *Bennett*, we would leave the case open to ascertain the balance ; but of this there is no probability.

It is therefore decreed, that so much of the judgment of the court below as renders judgments in favor of *Cutters & Phelps*, *William A. Bennett*, and *Fellowes, Johnson & Co.*, respectively against the said *Baker* personally, be affirmed ; and that as to the residue of said decree the same be reversed and set aside ; and proceeding to render final judgment in this cause, it is decreed that, as to the claim of said *Bennett* as attaching creditor, that there be judgment in favor of said garnishees, *Fellowes, Johnson & Co.*, with costs of the garnishment ; that the said *Cutters & Phelps* recover from the said *Fellowes, Johnson & Co.* the sum of $230 49, with costs of this suit in the court below, reserving to the said *Cutters & Phelps* their rights, as in the opinion of this court stated, with regard to the surplus, if any there may be, of the proceeds of the 1045 barrels at Plaquemine and Donaldsonville, in the answer of the garnishees mentioned. And it is further decreed that one half of the costs of this appeal be paid by the said *Bennett*, and the other half by the said *Cutters & Phelps*.