## OLIVER *v.* LAKE.

Where the owner of property has lost his control over it, and cannot change its destination, his creditors cannot attach; but whenever the owner can sell and deliver, the creditors may seize.

Where, by a contract entered into in the State of Mississippi between the agent of a factor residing in this State and a party living in the former, the agent binds his principal to ap-

---

ply the proceeds of cotton, delivered to him in that State to be sold here, to the payment of certain debts due to third persons, the rights of the parties must be determined according to the law of Mississippi; and, by that law the debtor is considered as having stripped himself of all authority as owner, the legal title to the property being vested, for the purposes of the agreement, in the factor, and an equitable title in the creditors for whose benefit the stipulations were made ; no previous assent of the latter being necessary to prevent other creditors from acquiring an adverse lien by execution or attachment, the stipulations being beneficial to them, and their acceptance therefore presumed. The trust thus created in favor of the creditors could not be destroyed either by the debtor, or the factor to whom the property was delivered. And where in such a case the property is attached by a creditor of the original owner, the attachment will be sustained only upon proof that the parties for whose benefit the stipulations were made had notice thereof, and decline to avail themselves of them.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. The facts of this case are fully stated in the opinion of the court *infrâ*.

*H. A. Bullard* and *Robinson*, for the appellant. There is no evidence that the Mechanics' and Traders' Bank ever assented to the agreement made by *Martin, Pleasants & Co.*, for their benefit, or accepted the stipulation made in their favor.

Nor does it appear that *James B. Lake* became a party to the agreement before the levy of the attachment. He afterwards intervened in the case, and claimed to be paid out of the fund in preference to the plaintiff.

The cotton was shipped for account of *W. A. Lake*, and consequently was at the risk of the shippers, until received by the consignees. It was shipped by *Bruner, Morgan & Markham*, the agents of the garnishees.

It is conceded on all hands that, while *in transitu*, the cotton was at the risk of *W. A. Lake*. As soon as it reached the hands of *Martin, Pleasants & Co.*, the agreement took effect. But to what extent? We contend that, without the consent of *James B. Lake* and the Mechanics' and Traders' Bank, the owner might retract, except as it relates to *Martin, Pleasants & Co.* ; the agreement on his part amounting only to an indication of payment, the bank and his brother James being only *præpositi solutionis gratiâ*. And if *W. A. Lake* at any time before such assent was given could control the fund and revoke his order, the fund was liable to attachment by his creditors, according to the well settled rule that, while the owner retains the control of his property his creditors may attach. *Wilson* v. *Lizardi*, 15 La., p. 255. *Bank of Alabama* v. *Kraft*, 18 La. 565.

If we regard the agreement of *Martin, Pleasants & Co.*. to pay over any balance in their hands, after satisfying their own demand, to the bank and *J. B. Lake*, as a *stipulation pour autrui*, it is clear it might be revoked at any time before acceptance by those for whose benefit it was intended. Merlin, Qu. de Droit, *verbo* Stip. pour Autrui. Civil Code art. 1896. *Gravier* v. *Gravier*, 3 Mart. N. S. 207. The fund itself belonged to *W. A. Lake*. He had directed it to be paid to his brother and the bank; but they had not assented to the arrangement. *Invito beneficium non datur*. Suppose, after selling the cotton, *Martin, Pleasants & Co.*, had failed ? On whom would the loss have fallen! Certainly the fund would not in the meantime be at the risk of the bank and *J. B. Lake*, who never assented to the arrangement and never constituted that house their agents, and were not bound by their agreement. Until *Martin, Pleasants & Co.* had paid to the third persons, or until they had accepted the stipulation in their favor, *Lake* might have withdrawn the fund, and *Martin, Pleasants & Co.* would not have incurred any liability to said third persons.

But the judge of the District Court was of opinion that the case was to be decided by the common law prevailing in Mississippi, and not by the law of Louisiana; that the contract was made there and the cotton delivered ; and that the contract of pledge was completed with its conditions. By reference to the contract it will be seen that it purports on its face to be a contract of pledge ; and it appears clear that it was to be performed in Louisiana. It recites that *Lake* is now shipping cotton to *Martin, Pleasant & Co.*, which he says he pledges to them for the payment of certain debts as before mentioned, There was then no delivery in Mississippi, so as to make the contract of pledge complete in that State. On the contrary it pre-supposes that, while on board,

OLIVER
v.
LAKE.

the property is still at the risk of the shipper. He then says that the proceeds are to be applied to the payment, first of his debt to the consignees, next to *J. B. Lake*, and lastly to the bank. This is a pledge only in name. It is in reality nothing but a mandate or agency. The cotton was not to remain in the hands of the pretended pledgee, merely as a security to be sold, if the debts be not paid, under judicial authority, but was to be disposed of at once and the proceeds to be applied as directed. Art. 3132 of the Civil Code forbids the pledgee to dispose of the pledge, and an·agreement to the contrary is null. It is therefore of the essence of a pledge that it should remain undisposed of, until a judicial order is obtained to sell it on failure to pay the principal debtor. But as it relates to *J. B. Lake* and the bank, there was clearly no pledge— without their express consent they could not be subjected to the obligations of pledgees. The contract of pledge is consensual. The pledgee is bound to a certain degree of diligence. Civil Code, art. 3134.

There was no delegation in this case, but simply an indication of payment. The delegation requires the consent of three persons, at least. 2 Poth. on Obligations, no. 565 *et seq.* For indication of payment, see same work, no. 569. But the judge says he adopts the doctrine in 4 Mason 217, 17 Mass. 551, and 11 Wheaton, 78 and 96. Those cases relate to assignments of property to trustees for the benefit of creditors, and have no analogy to this case. In cases of assignment at common law, the transfer of the property is absolute. There was no trust in the common law sense of the word. The cotton shipped was clearly at the risk of *Lake*, until it came into the possession of *Martin, Pleasants & Co.*; it was shipped by *Lake.* The agreement to receive and sell the cotton for account of *Lake*, amounts neither to a pledge, nor to an assignment to trustees for the benefit of creditors. The transaction is an ordinary commercial one.

*Prentiss* and *Finney*, for the defendant. The only question presented in this cause is, whether the plaintiff or the intervenor is entitled to the fund attached. They are both *bona fide* creditors to the amounts claimed by them respectively. The intervenor claims a preference on the fund attached, and the defendant and garnishees insist that at the time of the service of the attachment on the latter, there was nothing in their hands belonging to the defendant liable to attachment; that the fund out of which the plaintiff claims to be paid, resulted from a sale of cotton, which, before the attachment, had been assigned and conveyed in trust by the defendant to the garnishees, and delivery thereof made accordingly, in the State of Mississippi, to pay *certain* debts of the defendant specified in the deed of assignment, and that the said deed of assignment and delivery of possession of the said cotton in the State of Mississippi, by the laws of that State vested a clear legal and perfect title in the garnishees for the purposes of the trust, and an equitable title in the creditors for whose benefit it was made. The contract was made and executed in the State of Mississippi; the delivery of the cotton to the garnishees was complete in that State; through their agents they received it there, just as though they had been present acting for themselves.

The counsel for the plaintiff contend that this instrument is in form a contract of pledge, and that the contract of pledge is a consensual contract, and that no consent on the part of the beneficiaries is shown. It is true that in the instrument the word pledge is inaptly used—it is evident the contract is not a pledge, for then the property would have been handed over to the creditors directly. There would have been no intervention of a trustee between the debtor and creditor. But bad English should not destroy the effect of an instrument; the inapt use of the word pledge should not and cannot alter the legal effect of this. It is in fair construction and intendment an assignment in trust for the benefit of certain creditors, and by the common law, which prevails in Mississippi, vested a legal title to the cotton in *Martin, Pleasants & Co.*, for the purposes of the trust, and an equitable interest in the creditors named, according to the extent of the provisions in their favor, and that without any assent whatever on the part of the creditors, *cestuis que trust.* The practical good sense of the common law presumes the consent of a creditor to a conveyance in trust, to pay him his money. To this point the authorities are abundant. 7 Rob, 1. 11 Wheaton, 78. 7 Peters, 608. 4 Mason, 217. 11 Wendall, 241. 4 John. Chan. 522. The case of *Layton* v. *Rowan*, 7 Rob. 1, shows that our courts have recognized and protected such rights as the trustee and *cestuis que trust* claim by virtue of the assignment in question.

The judgment of the court was pronounced by

SLIDELL, J. The question presented in this case is, whether the plaintiff as an attaching creditor is entitled to be paid out of the fund in the hands of the garnishees, *Martin, Pleasants & Co.,* in preference to two other creditors, to wit: James B. Lake and the Mechanics' and Traders' Bank. The fund in the hands of *Martin, Pleasants & Co.* originated from two sources: first, a shipment of fifty two bales of cotton, made in September, 1846, by the defendant to the garnishees; and secondly, shipments of one hundred and fourteen bales of cotton, which were delivered under an agreement which will be presently noticed, by the defendant to the agents of the garnishees in Mississippi, and were by them forwarded to their principals. The first shipment of fifty-two bales was not covered by the agreement in question. Its proceeds, therefore, being $1,915 53, after paying the advances of $1,000 made upon it by the garnishees, and $20 20, being a former balance, must be considered as a fund unappropriated for the benefit of other parties, and therefore subject to the attachment. It is to be observed that the only other claim of the garnishees besides the sum of $1,020 20 above mentioned, was an amount of $2,000 for an advance to which other property was by the agreement of the parties specially appropriated. The contest then is reduced to so much of the fund in the hands of the garnishees as originated from the proceeds of the cotton delivered in Mississippi to the agents of *Martin, Pleasants & Co.*

Some weeks after the shipment made directly by the defendant to the garnishees a written agreement was made in Mississippi, between the defendant and the garnishees represented by their agents, *Bruner, Morgan and Markham,* by which, after reciting that *Lake* is shipping cotton to *Martin, Pleasants & Co.,* he declares that he pledges it, first, to the payment of an accommodation acceptance of *Martin, Pleasants & Co.* for $2,000 then soon to be matured, "and then to apply the proceeds of cotton as they receive it to the payment of the sum of $1,600 to *James B. Lake,* of Maryland, and after the payment to *James B. Lake* then the nett proceeds shall be applied to the payment of $1,400 to the Mechanics' and Traders' Bank of New Orleans. Now the said *Lake* does by this instrument distinctly pledge the cotton hereafter shipped of this crop to the payment of the debts above enumerated, and the said party of the second part do promise and oblige themselves that, *to the extent of the cotton delivered to their agents in Vicksburg, Mississippi, Bruner, Morgan & Markham,* they will apply and pay the said debts in the order that they are mentioned by the said *Lake.*" One hundred and fourteen bales were delivered to the agents of the garnishees under this agreement, and shipped by them to *Martin, Pleasants & Co.,* who received it prior to the attachment, and have paid the draft of $2,000 mentioned in the agreement. Their right to reimbursement is not disputed.

*James B. Lake* intervened soon after the attachment was levied, and claimed payment under the written agreement. The Mechanics' and Traders' Bank has not intervened. It does not appear that the Bank has ever signified its acceptance of the stipulations of the agreement, nor is it satisfactorily shown that it had notice of them. *Lake* did not signify his acceptance before the attachment, nor does he appear to have been informed of the agreement until after the garnishment. It is proper also to remark that no fraud is shown in this case, nor is it even proved that the defendant was insolvent.

Although in the instrument above mentioned the term pledge is used inaptly, it is not according to its fair construction and legal intendment a contract of

11

OLIVER
v.
LAKE.

pledge, but an assignment of property out of the proceeds of which the assignee is first to pay himself, and is bound next to pay the other debts mentioned in the assignment.

It has become a well settled rule in the law of attachment that, when the owner of the property has lost his power over it and cannot change its destination, his creditor cannot attach; the converse of the rule being that, whenever the proprietor may sell and deliver, the creditor can seize. See *Armor* v. *Cockburn*, 4 Mart. N. S. 669. It is necessary therefore to consider the effect of the agreement upon the rights of *W. A. Lake*, and what duties it imposed upon *Martin, Pleasants & Co.* The two enquiries in a great degree involve each other, tend to the same conclusion, and may be concurrently treated. By this agreement it was clearly understood between the contracting parties that *Martin, Pleasants & Co.* should receive possession of the property, sell it, and apply the money, first, to their own reimbursement for the advance of $2,000, and then to the payment of the two creditors named in the agreement. There was no express reserve by *W. A. Lake*, of any future control over the property. Upon the face of the agreement, which he presently executed by delivering possession, he stripped himself of the authority of owner. But it is said that, under the agreement, *Martin, Pleasants & Co.* were his mere agents, their agency being however coupled, as regards themselves, with an interest for the reimbursement of their advances; and that at any time, on reimbursing or settling for the advances, he could have withdrawn the property or its proceeds from their control. To test the truth of this proposition it is necessary to enquire what duties and obligations towards others were imposed upon *Martin, Pleasants & Co.* Such duties and obligations, if they existed, formed part of the contract as between them and *Lake*, and he could not be permitted to violate them.

If the question be tested by the laws of Mississippi, where the agreement was made, it appears to us free from difficulty. We understand the rule there to be well settled that, in such case, the legal title would be vested in *Martin, Pleasants & Co.* for the purposes of the agreement, and an equitable title in the creditors for whose benefit *Lake* stipulated; and that, to prevent other creditors from acquiring an adverse lien by execution or attachment, a previous assent of the creditors was not necessary to be shown, the stipulation being purely beneficial to them, and therefore its acceptance presumed. See *Brookes* v. *Marbury*, 2 Wheaton, 79. 4 John. Cha. 529. 6 Ves. 662. 4 Mason, 214. The opposite doctrine has been held in repeated decisions in Massachusetts; but those decisions spring from the defects of the local law. The courts there do not possess equity powers; and the policy of the law providing for attachments, and not providing any remedy in equity against the trustees, was considered as prohibiting the establishment of a trust estate by an insolvent debtor for the benefit of creditors not parties to it. It is plain, therefore, that if rights were thus created in favor of the creditors, which the law would recognize and preserve for them, even before their acceptance, there was created, at the same time, by the agreement, a correspondent duty on the part of *Martin, Pleasants & Co.* to hold the property, and apply it to the purposes so stipulated. This duty created by the agreement *Lake* was bound to respect, and as he could not violate it, his attaching creditor can exercise no greater right.

This case was decided by the district judge upon the authority of some of the cases just cited, and in applying the law of Mississippi to this contract it

seems to us he did not err. The one hundred and fourteen bales ·of·cotton were received under the agreement, by the agents of *Martin, Pleasants & Co.* in Mississippi. A receipt there by the agents was a receipt ·by themselves in that State; and the moment the property came into their hands in that State, under an agreement made there, it seems just.to consider the law of that State as operating upon the subject matter, and clothing the property .thus delivered with a trust in favor of the beneficiaries, which neither *Lake*, nor *Martin, Pleasants & Co.* could destroy without their assent.

In this connection it is proper to ·notice the argument of the plaintiff's counsel with regard to the ownership of this property, as tested by the maxim *Res perit domino*. It is very true that,· if the cotton had been lost on its voyage to New Orleans, or been destroyed by fire here, ·or if *Martin, Pleasants & Co.* after selling it and receiving the proceeds, had failed, the loss would have fallen on .*W. A. Lake*. But there is no inconsistency in the concurrent existence of a qualified ownership in one party, and a control and dominion over it for certain purposes, in another party. Thus, when property is given in pledge, the pledgor parts with the possession and control of the thing pledged; but if it perishes without the fault of the pledgee the loss is the pledgor's, and the debt remains unsatisfied. The payee of a bill of exchange has an order upon the fund in the hands of the acceptor; but if .the acceptor fails, the drawer, if there has been due diligence on the part of ·the holder, bears the loss. So a consignee who has made advances is deemed a qualified .owner of the property consigned; but there is also a qualified ownership in the ;consignor, and its destruction is his loss.

While however, we recognize the equitable ·interest created by the agreement of the parties in favor of ·the two creditors, ·and presume ·their acceptance, we have no right to compel their participation in the fund, or withhold it indefinitely from the attaching creditor. *James B. Lake* has intervened, and claims payment. He is clearly entitled to that relief, although he proves no actual acceptance before the attachment·was levied. But the Mechanics' and Traders' Bank have not intervened, and·the case, as to them, stands merely upon the implied acceptance. We have said that there is no ·satisfactory proof that they have had notice of the provision for their benefit. We think it equitable that they should have notice; but, on the other hand, ·if they do not elect, within a reasonable time, to participate in the fund, whether because they have been provided for elsewhere, or from any other cause, ·it is just that the attaching creditor should take the benefit of their refusal. The judgment of the court below, directed unconditionally that the .funds be applied to the payment of the Mechanics' and Traders' Bank. In this respect, ·we think the judgment should be modified, so that notice be given to the Bank, and a reasonable time allowed for the signification of its acceptance, and for.intervening in the cause; in default of which this plaintiff should have judgment to be paid after *James B. Lake.*

It is therefore decreed that the judgment of the court below rendered upon the intervention, be reversed; that the proceeds of sale of fifty-two bales of cotton, shipped by the defendant to *Martin, Pleasants & Co..* to wit: $1915 53, be applied first, to the payment to *Martin, Pleasants & Co.*, of $1020 20; next to the payment of the costs occasioned by the attachment; and lastly towards the payment of the judgment obtained by said plaintiff against the said defendant; and it is further decreed that the proceeds of one hundred and fourteen

OLIVER
*v.*
LAKE.

bales of cotton, delivered by the defendant in Mississippi to the agents of *Martin, Pleasants & Co.*, to wit: the sum of $3992 36, be applied, first, to the payment of said *Martin, Pleasants & Co.*, of the sum of $2050 00 ; secondly, to the payment of the costs occasioned by the intervention and of this appeal; thirdly, to the payment of *J. B. Lake*, of the sum of $1600. And as to the surplus of the proceeds of sale of said one hundred and fourteen bales, it is decreed that this cause be remanded for further proceedings according to law ; that a copy of this decree be served upon the Mechanics' & Traders' Bank, and if, within ten days after service, said corporation shall appear and claim the benefit of said fund, and it shall appear upon due proceedings that the said corporation is still the creditor of said defendant, and entitled to the benefit of said surplus, said surplus shall be applied to the payment of said Mechanics' & Traders' Bank ; otherwise the said surplus shall be applied to the payment of the judgment in favor of the plaintiff against the defendant,