## No. 1296.

DENAISE COLE AND HUSBAND, ADMINISTRATORS, ET AL. VS. JACOB COLE, JR., ET AL.

By the act 5 of 1884 the right of forced heirs to establish by parol the simulation or acts or conveyances executed by those from whom they claim to inherit extends to the entire estate and the restriction of such right to the *legitime* is removed.

Where an act of sale is attacked as simulated the attacking party is not debarred from proving its simulation, and committed to the truth of its stipulations, by the offering of the act in evidence without reservation. Where the vendor remains in possession and control of the property after the execution and date of the written transfer the sale will be presumed to be simulated.

APPEAL from the Twenty-fifth District Court, Parish of Vermilion. *De Baillon*, J.

*O'Bryan & White* for Plaintiffs and Appellees:

1st. Forced heirs when attacking simulated sales of their ancestors are not compelled to produce a counter letter; but may prove simulation by parol evidence. And in such proceedings their right of action is not restricted to their *legitime*. Act No. 5, of 1884.

2d. Representation is a fiction of the law, the effect of which is to put the representative in the place, degree and rights of the person represented." C. C. Art. 894.

3d. "In suits to uncover simulations, the largest latitude is allowed in the reception of testimony." 33 Ann. 1057; 56 Ann. 684.

4th. "Conversations and admissions of one of the parties to a simulation are admissible in evidence, though made out of the presence of the other party." 29 Ann. 4; 15 Ann. 177.

5th. A price is an essential requisite of a sale. C. C. 2439.

6th. "Simulation is presumed where the vendor remains in possession." 28 Ann. 357. "Where the vendor of prop·1ty remains in possession until its death, it cannot be recovered from his succession under a title by transfer from the deceased, unless the claimant establishes good faith, and the reality of the sale." 15 Ann. 555.

7th. *Prima facie* proof of simulation will be considered as conclusive, and sufficient to set aside the transaction complained of, if the parties charged with such simulation do not even attempt to rebut it by their own testimony. A party's silence under such circumstances is construed against him. 33 Ann. 1057; 10 Ann. 691; 15 Ann. 663.

8th. Prescription cannot remedy the defects of a simulated title. 30 Ann. 1099.

9th. Where the simulation of a sale is the subject matter of a suit, and the party attacking offers the act in evidence in order to lay before the Court the cause of his complaint, he is not thereby precluded from contradicting the recitals of the deed.

The doctrine of estoppel only goes to the extent of prohibiting a party from impugning his own self-serving acts.

A harsh and rigid application of the doctrine of estoppel is not favored by the law. 24 Ann. 210; 38 Ann. 102; 93 U. S. 335. Succession of Harris, 39 Ann. p. —.

*Mitchell & Gorham* on same side.

*George H. Wells & Son* for Defendants and Appellants.

The opinion of the Court was delivered by

TODD, J. This is a suit by a number of the forced heirs of Jacob Cole, deceased, to have declared simulated certain conveyances of

property made by the deceased to two of his sons, James Cole and Jacob Cole, Jr., a few years prior to his death.

From a judgment in favor of the plaintiffs, declaring the acts simulated, and restoring the property to the succession of the deceased, the defendants have appealed.

Jacob Cole passed most of his life on an island off the coast of Vermilion Parish, known as Mulberry Island. There isolated from the world, with no neighbors nearer than twenty miles, a numerous progeny grew up around him. As his children and grandchildren attained their majority they left him, and for many years he led the life of a hermit, feeble and almost entirely blind, and was attended and nursed by an ex-slave, who remained with him, watched over him and cared for him with the greatest fidelity and devotion.

The wealth of the deceased, besides his land, mainly consisted of his cattle, which rapidly increased in numbers, and at his death were estimated to be worth at least $15,000.

Shortly after his death these conveyances to his two sons, assailed in this suit, and which embraced his lands and his cattle, were produced, and which, it appears, up to that time had remained unknown to his other heirs; and under these the sons, defendants herein, set up claim to his entire estate.

We have made an exhaustive examination of the record, and therein we find proof conclusive of the simulation charged.

1. In the first place it appears to have been a transfer of his whole property—a sale *omnium bonorum*—which, of itself, ordinarily carries with it a presumption of simulation.

2. It is shown that after this purported transfer, the deceased remained in the exclusive possession and control of the property as before, selling cattle from time to time, and also part of the land; and this continued up to his death—a condition of things that also gave rise to a presumption of simulation.

3. The stipulated price was wholly inadequate, bearing no comparison to the real value of the property.

4. James Cole, through whom the alleged purchase was made, and who signed the deed for himself and brother, was shown to have been without means, and could not have possessed, at the time, the money to pay the inadequate price stipulated in the acts of sale.

5. There is also evidence in the record that leads strongly to the conclusion that, in executing these acts, the deceased never really intended to convey the absolute ownership of the property to his sons. He seemed to possess a morbid sensitiveness respecting the interference

of courts and officers of the law in the settlement of his affairs after death, and a horror of the attendant costs and charges, and was under the belief that these dire consequences could be averted by putting his estate in the hands of his sons, and leaving to them the distribution of his estate and the settlement with his other heirs. And this impression is confirmed by the acts and declarations of the defendants themselves, who, at first, were profuse in fair promises to the other heirs of a just and full settlement of their rights in the estate, but which promises became fewer and more stinted in time, and at last ceased; when on their vantage ground they gradually yielded to the silent but insidious promptings of avarice, which gradually and quietly led them to conclude that it were better and wiser to hold fast to what they had, as they thought, so safe within their grasp.

Their conduct best illustrates the wisdom and keen appreciation of the immortal Scottish bard when thus in verse he moralizes:

> "I no say men are villians all,
>   The real, hardened, wicked,
>   Who hae nae fear but human law
>   Are to the few restricted;
>   But ah! mankind are unco weak
>   And little to be trusted,
>   When *self* the wavering balance shakes,
>   'Tis rarely right adjusted."

It is to be noted that the defendants made no effort to break the force of this strong array of evidence against them, nor to repel the legal presumptions confronting them, by any proffered personal explanation. The real facts were within their knowledge, the truth within their keeping, but their voices were not heard on the witness stand giving testimony in their own behalf; they were wholly silent, and their silence was significant.

The counsel for the defendants urge, with seeming seriousness, the contention that plaintiffs committed themselves irrevocably to an affirmation of the truth and reality of the stipulations of the several deeds as to price or consideration therein expressed, by themselves offering these deeds in evidence without reservation. This contention is really trivial. These were the very acts assailed in the petition as simulated; they constituted the very gravamen of their complaint, the *corpus* of their action, and the first step could not have been taken in its prosecution until they produced and submitted to the Court the alleged acts against which the action was directed. The authorities

cited by the counsel have no bearing whatever on the point in question.

And there is just as little force in the further contention that the claim of the plaintiffs to the property, included in the deeds, and their right to prove the simulation of the acts by parol is confined to their *legttime*.

This proposition could only have been made in ignorance of the existence of Act 5, of 1884, which expressly grants such right without restriction.

The judgment of the lower court is affirmed, with costs.