■Statement of the Case.
MONROE, J.
Plaintiff sued S. P. Martin on a demand note for $2,487.58, bearing interest from date and providing for the payment of attorney’s fees, on which there is a credit of $255.38, and on May 18, 1909, caused an attachment to issue (on the allegation that Martin has left the state permanently), under which Lee McAlpin and P. G. Pye were made garnishees. ' McAlpin answered that he had in his possession drafts aggregating in *736 amount $920 — one, payable to “S. P. Martin and J. M. Cavanaugh, Trustee,” in which the appearer owns an interest of $109.50, another payable to S. I. Poster, attorney in fact, and O. W. Elam, attorney at law for Joseph M. Cavanaugh, trustee for S. P. Martin; and a third, for $109.50, made payable to S. I. Poster, attorney in fact, and C. W. Elam, attorney at law for Joseph M. Cavanaugh, trustee for S. P. -Martin, the last-mentioned draft being solely the property of respondent, in payment of premiums due on policies, and was issued separate from the other draft of $350 for that reason.”
Thereupon the following parties intervened, to wit: Jos. M. Cavanaugh, trustee, Hameter-Busby Mill & Elevator Company, Vordenbaumen-Eastham Company, Lee Hardware Company, A. Lehman & Co, B. J. Wolf & Sons, H. T. Cottam & Co., P. P. Han-sell Bros., Picard, Kaiser & Co., Standard Guano & Chemical Company, Neosho Milling Company, Missouri & Kansas Grain Company, and Simmons Hardware Company— alleging: That they are creditors of Martin, in various amounts, on account of merchandise sold to him while he was in business at Rosepine, La., during the years 1906 and 1907; that his stock of merchandise was destroyed by fire on April 29, 1907, being at that time insured under policies in the fire insurance companies and for the amounts, as follows: iEtna, $2,000; Shawnee, $1,000; Guardian, $1,000; Home, $1,000; Austin, $1,-000. That on August 6, 1907, said Martin, by written contract, assigned, set over, and delivered to Jos. M. Cavanaugh, as trustee for interveners, all his interest in said policies, said sale and assignment having been made for their use and benefit, the said trustee to collect the amount due and pay it over to them, share and share alike. That plaintiff had full knowledge of said assignment, and was a party to the same, claiming to be a creditor of the said Martin, and that, if it was a creditor, “its debt must have been paid and satisfied,” and it “has no claim * * * to the aforesaid policies of insurance or the proceeds thereof.” That, after said assignment, “the trustee sued on said policies, and subsequently compromised the claims thereon at 46 per cent, of their face value, and the checks or drafts now sought to be attached were forwarded in compliance with said compromise, and are not the property of Martin, but belong to interveners, as per said assignment. That plaintiff has no interest therein, was aware of the facts alleged in the petition (of intervention) when it sued out the attachment, and” that said attachment was “knowingly, wantonly, and maliciously and feloniously instituted in the attempt to defeat petitioners’ just rights, * * * and they have been damaged in the sum of $150 for attorney's fees,” etc. Wherefore they pray for judgment “dismissing the attachment, as to the garnishees, releasing the proceeds of the insurance policies unto your petitioners, Jos. M. Oavanaugh, as trustee for the creditors named and joining in this petition, decreeing the same to be the property of the petitioners named in the petition, that the bank take nothing by reason of its attachment and garnishment, and for judgment in favor of the trustee and your petitioners, who are creditors of the said 'Martin, against the said bank, in damages, in the full sum of $150, together with all the costs of this intervention.”
The assignment referred to in the intervention bears date August 6, 1907, purports to have been signed by Martin (who acknowledged his signature, before a notary public, and made affidavit that the instrument was executed in good faith), and reads, in part, as follows:
“I, Seth P. Martin, * * * for and in consideration of the sum of $1.00, to me, in hand, paid, by Joseph M. Cavanaugh, * * * and the trust herein created, do hereby sell, assign, *738 transfer, convey, and set over unto the said Joseph M. Cavanaugh all my right, title, interest, claim, and demand in and to the hereinafter named policies of insurance, and all sums of money, interest, and benefit, or advantage whatsoever, now due, as the result of the loss sustained by fire on April 29th, A. D. 1907, or which may, hereafter, arise, or to be had or made by virtue thereof [Then follows list of the policies], the same being the same policies issued to me to insure my property in Rosepine, Yernon parish, Louisiana. This conveyance, . however, is intended as a trust for the better securing of all my unsecured creditors, as their true indebtedness may appear, share and share alike, viz: [Then follows a list of creditors, including those named in the intervention and a number of others, among whom is the plaintiff now 'before the court.] Premises considered, said Joseph M. Cavanaugh is hereby fully authorized and empowered, in my name, place, and stead, to collect, receive, and receipt for all moneys due or to become due on any of the aforesaid insurance policies, and to bring and prosecute any suit, or suits, in law, or in equity, for the recovery of any sum of money, due, or to become due, on any one, or all, of the said policies, and to enter into, and make any compromise with said insurance companies, or any one of them, having for its object'a settlement of the amount due on said policy or policies, hereby giving and granting to the said Jos. M. Cavanaugh full power and authority to do and perform any and all acts and things whatsoever, requisite and necessary to be done, in or about the premises, as full, to all intents and purposes, as I might, or could do, if personally present, and apply the proceeds, or so much thereof as may be necessary, arising from the collection of the aforesaid policies of insurance, to the payment of the claims of my aforesaid creditors, percentum per centum, and should there remain a surplus, after the jjayment, in full, of the aforesaid creditors, then, and in that event, such surplus shall be paid over by the said Jos. M. Cavanaugh to the said Seth P. Martin, his heirs or assigns.”
' After the execution of the foregoing instrument, Martin appears to have left the state of Louisiana for parts unknown, and he was represented in the trial court by a curator ad hoc. Following the filing of the intervention, plaintiff filed a supplemental petition, asking that garnishment process ,be directed to S. I. Foster and C. W. Elam, attorneys at law, and Foster answered the first interrogatory by saying that he had nothing in his possession belonging to the defendant. To the second interrogatory, inquiring about drafts, etc., given in settlement of insurance policies payable to defendant, he answered:
“Yes; I have, under my control, the sum of $1,161, as the proceeds of certain drafts forwarded to me, as follows: The Austin Fire Insurance Company, $460, the ¿Etna Insurance Company, $701, and that said amounts were paid in settlement of policies as described in a certain intervention hereinbefore filed, the ¿Etna Insurance Company holding the premium of $219 in making the above draft. The draft from the Austin Insurance Company was made payable to ‘S. P. Martin, Jos. M. Cavanaugh, trustee, S. I. Foster, Atty. in fact, C. W. Elam, Atty. at law.’ The draft of the ¿Etna Company was made payable to ‘S. I. Foster, Atty. in fact,. C. W. Elam, Atty. at law.’ The above drafts were in my control at the time the above interrogatories were served, or, that is, the proceeds were. Further answering, S. I. Foster and C. W. Elam have a privilege and claim of $400 against said proceeds for attorney’s fees in filing suit and collecting same.”
Pye and Elam do not appear to have answered as garnishees, and may not have been served. At all events, nothing is here asked against them. The interveners filed a supplemental intervention, alleging:
“That the funds realized from the compromise of the suits described in the original petition of intervention are subject to the payment of $400 attorney’s fees to C. W. Elam and Sidney I. Foster, incurred in said suits, and that said amount of $400 bears as a privilege against said funds and should be paid out of the same by preference.”
On the trial of the case, it was shown by wholly uncontradicted testimony that plaintiff holds and owns the note sued on; that it was made by Martin; that the balance alleged to be due on it is actually due; and that Martin was, when this suit was instituted, indebted to the bank in further sums, the whole aggregating about $16,000. On the other hand, it was not shown that the bank was ever notified that- Martin had made an assignment to Cavanaugh as trustee, or to any one else, or had ever accepted or consented to such assignment, or that any of the other creditors named had received such information until after the assignment had been made, or have ever accepted the assignments, save by the intervention herein filed, in which not all of those named in the assignment are joined. Mr. Sidney I. Foster testified that the policies were delivered to *740 Mm by Martin and Cavanaugh for collection; that Martin furnished the list of creditors as set out in the assignment; that witness afterwards found that some were omitted, but did not change the instrument because it contains the words “all my creditors”; that he proceeded to bring suit on the policies, and that Martin made no claim to the proceeds, in fact, so far as the witness knows, has left the state permanently. He then proceeds to give some details in regard to the insurance — the reasons for compromising on 46 per cent, of the face of the claims — why the whole 46 per cent, has not been collected, etc., and further testifies that, when this suit was brought, he wrote to the interveners, to whom in 'September, 1907, he had sent copies of the assignment, informing them of the situation, and that they had authorized him to intervene and agreed to pay his fee for so doing. On a second trial of the case the judge a quo gave judgment for plaintiff for the amount claimed, and maintained the attachment and garnishment against Foster and McAlpin, condemning them to pay the amounts admitted to be in their hands, respectively, and dismissing the intervention at the cost of the interveners, who have appealed.
Opinion.
The assignment here in question was arranged between Martin, the debtor, Foster, his legal adviser, and Cavanaugh, whom he selected to act as trustee. Martin’s creditors are not shown to have been consulted or informed, and, if Cavanaugh had followed Martin into the great unknown with the proceeds of the policies, it would have been Martin’s money that he carried with him, and not the money of the creditors, which goes to prove that, notwithstanding the assignment, the money was still liable to attachment as Martin’s money at the suit of Martin’s creditors.
In Board of Liquidators of Hart & Hebert v. Bates, Sheriff, 33 La. Ann. 473, it appeared that the debtor dealt directly with the creditors (instead of, as in this case, with a person selected by the debtor and without the knowledge of the creditors), that some of them accepted the surrender and some did not, and that certain of those who did not accept, thereafter, seized certain of the surrendered property and' caused it to be sold, whereupon the others, styling themselves the owners of the property, sued to annul the sale. In deciding the case the court cites the law and jurisprudence to show that even in the case of a voluntary surrender, made through the court, the title to the property surrendered does not pass from the debtor until it is sold in due course, and then says:
“These authorities are referred to only to show that, as in a voluntary surrender accepted by the court the title remains in the insolvent, this title cannot surely be considered as divested in the case of a voluntary surrender, made extrajudicially; more especially, when it is not accepted by all the creditors.”
In the instant case the surrender was not made to the creditors, or any of them, and was not attempted to be accepted by any of them until after the attachment, and then only by the inference arising from the claims asserted by way of intervention. The fact is Cavanaugh is not a party to the instrument of assignment, for his signature is not attached to it, and he makes his appearance in the matter only as having thereafter, acting with Martin, delivered the policies of insurance to Martin’s attorney.
Counsel for the interveners cite as supporting their contention the ease of Cutters v. Baker, 2 La. Ann. 572, where the court held (quoting from the syllabus):
“Where a factor to whom property has been consigned with directions to apply the proceeds to the payment of certain creditors of the principal agrees with the latter to apply the proceeds to the payment of their claims, the appropriation cannot be affected by a subsequent attachment by a creditor of the princi *742 pal; the property, or its proceeds, being beyond the control of the latter.”
And. it might be said here if Martin had given an order on Cavanaugh, directing him to pay to certain creditors certain funds which he had placed in Cavanaugh’s possession, and Cavanaugh had agreed with the creditors to make the payment as directed, the funds could not subsequently have been seized by another creditor, because they would have passed beyond his control. But we do not fi.nd that prior to the attachment .in this case Cavanaugh had agreed with any of Martin’s creditors to pay over the funds to them, and, so far as we can see, Martin could up to that time have withdrawn the mandate to Cavanaugh, just as he could have withdrawn it as soon as it had been conferred, and just as the principal in the case cited could have withdrawn his directions to the factor up to the time that the latter agreed with the creditors to act on them. Moreover, there is a difference between an ordinary transaction, where a draft is drawn upon a payee who accepts, and the case, of an absconding debtor, or debtor in failing circumstances, who undertakes to make a voluntary surrender of all his property to all his creditors, none of whom accept. This court has said in a case other than that of Board of Liquidators v. Bates, supra:
“No debtor in failing circumstances could by a voluntary surrender of his property to certain of his creditors on condition of a discharge from their claims defeat the legal resources of all other creditors against his property thus mentioned.” Bothick v. Greves, 34 La. Ann. 907.
The case of Oliver v. Lake, 3 La. Ann. 82, cited by intervener’s counsel, is similar to that above referred to, merely holding the familiar doctrine that:
“Where the owner of property has lost his control over it, and cannot change its destination, his creditors cannot attach it, but whenever the owner can sell and deliver the creditors may seize.”
Applying that doctrine in this case, there was nothing up to the attachment to have prevented Martin from repossessing himself of the assets which he had confided to Cavanaugh, who (we are informed, through the briefs) was his bookkeeper, and to whom. Martin’s creditors had given no notice so far as the record shows of any intention to accept the stipulation in their favor in the act of assignment.
We find no error in the judgment appealed from, and it is accordingly affirmed.