No. 3857

Second Circuit

(First Division)

BULLARD v. NATTIN ET AL.

(November 18, 1931. Opinion and Decree.)

Wallace & Hardeman, of Benton, attorneys for plaintiff, appellant.

L. B. Duke, of Benton, attorney for defendants, appellees.

TALIAFERRO, J. On January 23, 1930, Henry Rhodes filed suit in the district court of Bossier parish against W. A. Atkins on open account for $19.95, and, after trial, secured judgment therefor. Atkins contested this suit, disclaimed liability for the account, asserting that his wife was responsible for its payment; that the sales of meats and other edibles making up the account were made to his wife while operating a cafe in Bossier City, in which he was not interested, had no control over it; and that the cafe was purchased by his wife with her separate funds. No appeal was taken from this judgment. Execution issued thereon, under which the sheriff of Bossier parish seized and advertised for sale for May 3, 1930, the equipment and fixtures in the restaurant mentioned.

The present suit was instituted by Mrs. Bullard against said sheriff and Rhodes, wherein she claims ownership of the seized property by notarial act of sale from W. A. Atkins, her son-in-law, dated December 31, 1929, for a price of $1,800, of which amount $800 is alleged to have been paid in cash, and the balance discharged by the vendee's assumption of an outstanding mortgage against the property.

Plaintiff applied for and secured the issuance of a rule on the defendants to show cause why a preliminary writ of injunction should not issue. This rule was fixed for trial and tried on May 1st, two days before the sale of the seized property, resulting in a judgment rejecting plaintiff's demands and denying the injunction. A devolutive appeal was perfected from this decree, which is now before us.

Rhodes denies that plaintiff is the owner of the seized property, and attacks the purported sale to plaintiff by Atkins as being in bad faith, without consideration,

and perpetrated through fraud and collusion, for the sole purpose of placing the property beyond reach of Atkins' creditors; and that no delivery was made of the property. In all other respects, the suit was put at issue by this answer.

The record does not affirmatively disclose that the case was tried on its merits, but evidently the court and attorneys for both sides considered it submitted on the merits with the evidence adduced when the rule was tried. The judgment, in effect, finally disposes of the case. If there was nothing before us to review but the ruling of the lower court on the question of issuance of the preliminary injunction the matter would be moot, as sale of the property took place on May 3, 1930, as advertised.

The sale of the restaurant equipment and fixtures to plaintiff recites that $800 of the price was paid in cash, and that the balance of the price, viz., $1,000, was to be discharged by plaintiff assuming and paying a mortgage for that amount against the property held by Bossier State Bank. However, the evidence shows that no part of the price was paid in cash, but that two notes of Atkins and his wife, one for $300, dated January 4, 1926, and one for $500, dated December 10, 1926, in favor of and owned by plaintiff, were discharged in lieu of payment of, cash, as declared in the act of sale.

Mrs. Bullard, by written act, leased the restaurant property back to Atkins the same day she took deed to it, and before the same notary and same witnesses.

On February 18, 1929, W. A. Atkins executed a note for $1,000 to his own order and by him indorsed, due one year after date, and gave a mortgage on the restaurant fixtures and equipment to secure payment of same. This note was pledged as collateral security with the Bossier State Bank to a note of Atkins for $250, or about, and was so held by that bank when the sale was made to plaintiff.

It is well to note here that Atkins and his wife testified in the case of Rhodes against the former, and both swore positively that the restaurant and its equipment and fixtures belonged to Mrs. Atkins, who is a daughter of Mrs. Bullard. That case was tried after the sale to Mrs. Bullard, after the mortgage of $1,000 was executed and recorded, and after Atkins was supposed to have leased the property from plaintiff.

It is not contended that plaintiff went into possession of, or exercised any dominion or control over, the chattels described in the act of sale to her from Atkins. As a matter of fact, no change whatever in the situation of the property was effected by these transactions between Atkins and plaintiff. Mrs. Atkins remained in possession of same, and used it in the restaurant building as she had done previously.

We are satisfied from the evidence in the record that plaintiff loaned to her daughter and son-in-law considerable money, and it is established that they owed her the $800 represented by the notes above mentioned.

In this court, defendants made no appearance, nor filed brief. In the brief filed on behalf of plaintiff, argument is restricted to two propositions: (1) Whether delivery was made under the sale to plaintiff so as to affect third persons, and (2) has plaintiff rebutted the presumption of fraud arising from the fact of her vendor remaining in possession of the property.

"The tradition or delivery of movable effects takes place either by their real tradition, or by the delivery of the keys of the buildings in which they are kept; or, even by the bare consent of the parties, if the things can not be transported at the time of sale." Civ. Code, art. 2478.

"Sales or exchanges of movable property are void against bona fide purchasers and creditors unless possession is given before such bona fide purchaser or creditor acquires his right by possession. What a delivery of possession is depends on the nature of the property; it may be constructive or actual," etc. Civ. Code, art. 2247.

As between the parties, consent is sufficient to vest title to movables, but a different rule applies when the rights of third persons and creditors are involved. Civ. Code, art. 1922.

"In like manner, if movable property has been alienated by contract, but not delivered, it is liable in the hands of the obligor to seizure and attachment, in behalf of his creditors." Civ. Code, art. 1923.

In the instant case, the property in controversy consisted of movables which were susceptible to actual delivery, without inconvenience or disturbance of their immediate use. The nature of its possession underwent no alteration whatever as a result of the sale to plaintiff.

The fact that persons appear before a notary public and witnesses and execute a sale of movable property, a formality not required by law, does not satisfy the requirement of delivery of the object sold; but on the contrary, arouses a suspicion of the bona fide nature of the transaction, especially when the principals are related by the ties of blood or marriage.

The test in a case of this character is whether the vendor retains such possession and dominion over the thing as to be enabled to give good title to an innocent third person. If this has been done, the sale is incomplete, and creditors of the obligor may enforce their rights against the undelivered property.

"Where the owner of property has lost his control over it, and cannot change its destination, his creditors cannot attach; but whenever the owner can sell and deliver, the creditors may seize." Oliver v. Lake, 3 La. Ann. 78.

No change in possession of the property in controversy having taken place as a result of the sale to plaintiff, she not having received delivery of same either actually or constructively, levy thereon under the judgment against Atkins was legally made. However, if it be conceded that the sale to Mrs. Bullard was completed by delivery of the object of the sale, there is still another reason why the sale cannot be sustained.

The record leaves little or no doubt that Atkins was insolvent when the conveyance was made to plaintiff. He doubtless knew Rhodes was preparing to sue him, as the account due Rhodes was made in September and October, 1929, before the sale to plaintiff. In the Rhodes suit, he testified that the cafe property belonged to his wife. At this time, his possession of the property was supposed to be based upon the lease from plaintiff. He sold to plaintiff after he had given evidence that the cafe belonged to his wife. The acts and conduct of Atkins smack of fraud and reflect a well-defined purpose to prevent Rhodes from collecting the account due him, regardless of the character of the means necessary to accomplish the desired end.

Vendor remaining in possession is a badge of simulation. Civ. Code, art. 2480; Cole v. Cole, 39 La. Ann. 878, 2 So. 794.

The conveyance by Atkins to Mrs. Bul-

lard, considered in the light of the undisputed evidence in the case, was in reality an attempt at a giving in payment which may only be consummated by delivery. Civ. Code, arts. 2655, 2656; Queyrouze & Bois v. Thibodeaux, 30 La. Ann. 1114.

A person acquiring title to property in satisfaction of a previously existing indebtedness is not on quite so good a footing as one who buys outright and parts with the price to have the thing, where it is shown that the grantor is insolvent or has acted through fraudulent intentions.

It has been held by our courts in several cases that even though the vendee be in good faith in acquiring property from his debtor by dation en paiement, if it appears that the debtor was insolvent or acted through fraudulent motives, unknown to his vendee, the transaction would be annulled. The reason of the rule is obvious. The property of the debtor is the common pledge of all his creditors, and any attempt on his part to show a preference to one or more of them is subject to be set aside for that reason.

A sale to pay one creditor, even ignorant of the debtor's insolvency, is a fraud on the other creditors. Taylor v. Knox, 2 La. 16; Lovell v. Payne, 30 La. Ann. 512.

And this is true even though the grantee be in utmost good faith. Fishel v. Irwin, 132 La. 344, 61 So. 397.

"An insolvent debtor may lawfully sell for the price which is paid to him; but the law forbids him to give in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due. Civ. Code, art. 2658." Fishel v. Irwin. 132 La. 344, 61 So. 397; Appleby v. Lehman & Co., 51 La. Ann. 476, 25 So. 132.

The judgment appealed from is correct, and is hereby affirmed.