## HARMON v. MOORE et al.
### No. 5246.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 5, 1937.

Chris Barnette, of Shreveport, for appellant.

Chandler & Chandler, of Shreveport, for appellee.

TALIAFERRO, Judge.

The pleadings, the issues, and the facts of this case are fully and, with one exception, accurately related in the opinion heretofore rendered by us (169 So. 174, 175). In the course of that opinion, we said:

"The price was agreed upon and $300 of the $675 was paid by Williams. It was the understanding between Williams and Moore that the remaining balance of $375 was to be paid that afternoon in the city of Shreveport, Williams having made arrangements to borrow it. He met Moore in Shreveport after the cows had all been delivered to his dairy, on the same afternoon, and informed him that the person who had agreed to loan him the $375 had failed him, and it was agreed between them that he would be allowed time in which to arrange this balance, which amount he did raise some four days later, when he paid in full for the cows."

This statement of facts is erroneous in two respects. No part of the price of the sale of the cattle was paid concurrently with confection thereof, but it was mutually understood that all of the price would be paid in the city of Shreveport the afternoon of the day the agreement was reached, which was the same day the cattle were transported from the seller's place in Arcadia, La., to that of Williams, the purchaser, in Caddo parish, La. This erroneous statement is in a measure cleared up by the following passage excerpted from the latter part of our opinion:

"Early in the morning of December 23, 1935, at Arcadia, La., Williams and Moore agreed upon the price of the cows, the eighteen head were selected by Williams from Moore's herd; they were marked and delivered to Williams in a truck, hired by Williams to transport them to Shreveport. Delivery was complete upon the cows being placed in the truck hired by Williams. The price was to be paid that afternoon in Shreveport. It was not to be paid simultaneously with the delivery in Arcadia."

Primarily, we granted a rehearing (applied for by defendant in opposition), in order that said errors might be definitely corrected and the obvious conflict between the two statements clarified. The last of the quoted statements accurately reflects the true facts. In the application for rehearing, after calling attention to said errors, counsel say:

"Had this statement of fact been correct, then we would fully agree with your honors in the decision which has been rendered. * * * Therefore, we are not considering a case where $300 cash was paid and a credit allowed to a later time for the balance of $375.00. We are rather concerned with a case where the agreement was to pay the entire sum of $675.00 on delivery of the cattle in a certain place."

We shall briefly discuss the issue raised by this statement and endeavor to show the error in counsel's conclusions.

Williams had $300 of his own and thought he had perfected arrangements to borrow the additional $375 needed to pay for the cattle. He only learned of the collapse of his agreement with a third person to loan him this money after the cattle had been

transported to his place in Caddo parish. He then paid Moore the $300 and was granted an indulgence of a few days to pay the balance of the price. It was paid the fourth day thereafter. In the meantime, but after the $300 had been paid, the cattle were seized under execution against Moore, the seller. We take it that had all the price been paid before the seizure was levied, there would not now be any contention by any one that the sale was not then in all respects complete as against the world. We think the result would have been the same had Moore accepted Williams' note for the $375, payable thirty, sixty, or ninety days thereafter. Delivery to the purchaser was complete. He was thereafter in a position to and in fact did exercise absolute dominion and control of the cows, as owner. The quaere is: In view of the facts, did the indulgence for payment of a part of the price, without any other conventional modification of the pre-existing agreement between the parties, and without any intention to do so, work such a change in their relationship as regards the cattle that an effective seizure thereon could be laid by a judgment creditor of Moore? We cannot think so.

Article 1922 of the Civil Code, in part, reads:

"With respect to movable effects, although, by the rule referred to in the two last preceding articles, the consent to transfer vests the ownership of the property in the obligee, yet this effect is strictly confined to the parties until actual delivery of the object."

And article 1923 declares that if movable property has been alienated by contract, but not delivered, it may be attached (seized) in the hands of the seller by his creditors; while article 2247, in part, provides:

"Sales or exchanges of movable property are void against bona fide purchasers and creditors unless possession is given before such bona fide purchaser or creditor acquires his right by possession."

"The tradition or delivery is the transferring of the thing sold into the power and possession of the buyer." Civil Code, article 2477.

■ These articles of the Code are so clear that their meaning is removed from all doubt and it is that when movable property has been delivered to a purchaser, in pursuance of a contract of sale, creditors of the vendor may not pursue it into the hands of such purchaser. This principle is so well known and generally recognized that it is now hornbook. The Supreme Court has many times considered and passed on cases involving this principle and these articles of the Code. The leading early case, which has never been overruled but consistently since referred to with approval, is that of Oliver v. Lake, 3 La.Ann. 78, wherein the rule was stated to be:

"Where the owner of property has lost his control over it, and cannot change its destination, his creditors cannot attach; but whenever the owner can sell and deliver, the creditors may seize."

Later cases following this one, among others, are: Flash, Lewis & Company v. Schwabacker & Company, 32 La.Ann. 356; Davenport v. Adler, 52 La.Ann. 263, 26 So. 836; Sintes v. Commerford, 112 La. 706, 36 So. 656.

■ The dominion and control of the cattle were absolute in Williams at the time he paid the $300 to Moore, who was then helpless to change their destination. Had Williams thereafter sold and delivered them to a bona fide purchaser, certainly a clear title thereto would have been the purchaser's. Even if it be conceded, which we do not, that the passing of title to the cattle was understood by the parties to be in suspense until the price was paid, in keeping with the original understanding, certainly that condition ceased when the $300 was paid and a few days granted to pay or arrange the balance. It seems to us beyond debate that after the cattle were delivered to Williams, the parties had the right to arrange or rearrange the terms of payment of the price as they saw fit and the fact that a part of the price was deferred until a date subsequent to the seizure did not otherwise affect the status of the sale at all.

We are convinced of the correctness of our former opinion and judgment therein and it is now reinstated and made final.