ELLIS, Judge.
Plaintiff, on or about January 6, 1950, filed a suit against the defendant on a note dated December 6th, 1948 and due March 7th, 1949 in tire amount of $150.00, and in due course, on January 31st, 1950 obtained a judgment by default in the amount of principle, interest and attorney fees. In an effort to collect the judgment he caused to be seized and advertised for sale a horse named Dixie, belonging to the defendant, Charles Cormier. Lloyd Gary, appellant, intervened on the ground that the horse was not the property of the defendant but that said horse belonged to him. He also *483 asks for attorney fees in the sum of $250.00 as damages and asked that the seizure be recalled and set aside.
After due trial, the judge below found from the facts that there was no delivery of the movable property by the judgment ■debtor, Charles Cormier, to the alleged purchaser, Lloyd Gary, intervenor, and that therefore, the movable property was subject to seizure and sale. From a judgment dismissing intervenor’s rule this appeal has been taken.
The appellant contends that the animal seized was not the property of defendant but belonged to him, maintaining that' he had purchased the horse from the defendant five months prior to the seizure. On the other hand, plaintiff-appellee urges that the sale was simulated and that even though a sale did take place it did not effect plaintiff-creditor since there was no delivery and, therefore, the sale was ineffectual as to a third party creditor, the horse being subject to seizure in the hands of the defendant, Charles Cormier.
The intervenor testified that in September, 1949 he purchased three horses, namely, a mare and colt, and Dixie, the horse seized. That he moved the mare and colt to Iowa, just outside Lake Charles, Louisiana, and later to Port Arthur, Texas. The price for the three horses was to be $300.00 for the mare and colt and $500.00 for Dixie. He stated that he paid $500.00 in cash on the date that he bought the horses for Dixie, and paid the $300.00 for the mare and colt which he moved in installments.
The only person who claims to have been present when the sale was made other than the defendant and intervenor was Paul Cormier, brother of defendant. No receipt was given until approximately five months later. This receipt was not dated and we are of the opinion that it was given after the suit was filed.
The evidence further shows that Dixie had been bred as a quarter horse, which is one that races a distance of one-quarter mile or less, and that the defendant’s father was a trainer of such horses, and that this particular horse was raised by the defendant from a colt and had always been m the stable at his father’s home, where he was living at the time, and after the sale intervenor claims that he left the horse there and engaged defendant’s father to continue training the horse, and that he paid him $1.00 per day for this service and always in cash.
Defendant’s father took this horse sometime after the alleged sale to a colored man who assisted in the training of these kind of horses. It is shown that intervenor had been by the latter’s training grounds to see the horse, although this colored trainer was never told by anyone that the horse, Dixie, had changed ownership and belonged to Lloyd Gary. He still thought she belonged to the defendant, and he further testified that in January, 1950, intervenor told him that he wanted to see “Charlie’s (Defendant) mare Dixie” because he owned the sister and by Dixie’s performance he would know what to expect of the colt. Intervenor not only never told Toussand, the colored trainer, that he owned this mare, but he never paid the trainer for any of the training. The father of the defendant, testified that when he brought the mare to Toussand he did'not tell him the horse belonged to intervenor but told him not to look to the defendant for his money, that he himself would pay him.
The plaintiff testified that he had known this horse for two years and had talked with the defendant as late as January, 1950, although at that time the defendant indicated that he was still the owner of Dixie.
The record further shows that the defendant testified that he did not put the $500.00 in the bank but used it as cash in his business. There was a disinterested witness (Andrus) who testified that he was familiar with the horse in question and that to his knowledge the horse belonged to the defendant but that several weeks before the hearing and after the seizure he heard that it had been sold to inter-venor.
On the other hand, we have the unsupported testimony of intervenor, defendant, and defendant’s brother and father that the sale took place.
*484 The intervenor contends that there was a constructive delivery of the horse and, therefore, defendant had not retained possession. Under the facts, it is practically conceded that there was no actual delivery to intervenor, and we do not believe there was a constructive delivery.
The burden of proof where the seller retains possession, which has not been borne by intervenor, is expressed in Article 2480 of the Revised Civil Code as follows: “In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
In Bullard v. Nattin, La.App., 137 So. 551, 552, a judgment debtor had allegedly sold equipment to his mother-in-law by notarial act The equipment had never been moved and the judgment debtor had continued using it under written lease from his mother-in-law. The movable property was seized and in rejecting the alleged purchaser’s demand, the Court stated:
“ * * * the property in controversy consisted of movables which were susceptible to actual delivery, without inconvenience or disturbance of their immediate use. The nature of its possession underwent no alteration whatever as a result of the sale to plaintiff.
******
“The test in a case of this character is whether the vendor retains such possession and dominion over the thing as to be enabled to give good title to an innocent third person. If this has been done, the sale is incomplete, and creditors of the obligor may enforce their rights against the undelivered property.
“ ‘Where the owner of property has lost 'his control over it, and cannot change its destination, his creditors cannot attach; but whenever the owner can sell and deliver, the creditors may seize.’ Oliver v. Lake, 3 La.Ann. 78.
“No change in possession of the property in controversy having taken place as a result of the sale to plaintiff, she not having received delivery of same either actually or constructively, levy thereon under the judgment against Atkins was legally made.”
■In the present case there was nothing to prevent the defendant from giving a good title to Dixie as he still retained possession.
 We are, therefore, of the opinion that intervenor has not overcome the presumption, first, that the sale was simulated, and, second, that the defendant retained possession of the horse and it was, therefore, subj ect to seizure and sale.
It is accordingly ordered that the judgment of the lower court be affirmed.