177 So. 247

**REMBERT v. FENNER & BEANE.**

No. 34448.

Nov. 2, 1937.

Henry & Kelleher, of New Orleans, for relator.

Michel Provosty, of New Orleans, for respondent.

PONDER, Justice.

This suit comes to us on a writ of certiorari and review from the Court of Appeal, parish of Orleans, on the application of defendants and appellees.

The plaintiff alleges in his petition that Fenner & Beane, a commercial partnership, domiciled in the city of New Orleans, composed of Charles E. Fenner, John McCorkle, and others whose names are unknown, are indebted unto him in the sum of $1,333.-33; that on November 29, 1925, the plaintiff opened a brokerage account with Fenner & Beane at their office in the city of New Orleans for the buying and selling of securities on the margin; that he signed the customer's contract card, which customer's card was modified at the request of the plaintiff so as to provide that they might close petitioner's account in whole or in part only after previous notice to or demand on petition, and only whenever, in their opinion, plaintiff's account was insufficiently margined; that the plaintiff of his own accord closed this account on November 28, 1932; that on January 3, 1934, the plaintiff again opened a brokerage account with Fenner & Beane; that on June 19, 1934, they received a letter from Fenner & Beane requesting instructions to transfer the account to some other broker or bank, not for the reason that the account was insufficiently margined, but, for the reason that the plaintiff had shown an unfriendly attitude toward the defendants; that on June 23, 1934, before being able to comply with the request, the plaintiff was called

from the city and did not return until June 28, 1934; that while the plaintiff was out of the city a letter came to his office on June 26, 1934, which was not opened until his return; that a representative of Fenner & Beane telephoned plaintiff's office during his absence and inquired as to what the plaintiff was going to do about the letter and was advised that plaintiff was on his way from Chicago to New Orleans and that the letter would not be opened until the plaintiff returned on June 27th or 28th; that in the registered letter from the defendants there was no call for an additional margin but simply advised the plaintiff that, unless instructions were given for the immediate delivery of plaintiff's account or his check for $5,108.13 to cover debit balance, the defendants would be obliged to enter an order to sell his stocks on or around the close of the market of June 27th; that Fenner & Beane on June 27th sold all the securities of the plaintiff's, including certain stocks which they held as restricted collateral, although petitioner's indebtedness amounted to only $5,108.13, while the securities had an aggregate net market value at the time of sale of $9,286.-05, being the amount realized when sold on that date by Fenner & Beane; that when the plaintiff returned to New Orleans and found that his account had been closed out he wrote the defendants requesting them to replace the stocks on June 29, 1934, advising them that unless the securities were replaced within that time that he would purchase like securities and enter suit for the loss sustained; that Fenner & Beane refused to comply with the order and the plaintiff purchased through another broker-age company at an aggregate cost in excess of the proceeds of the unauthorized sale by Fenner & Beane of $333.33; that the plaintiff was damaged to the sum of $1,-000 in reputation, loss of business, mental worry, annoyance, and inconvenience; and that amicable demand was made in vain. The plaintiff prayed for judgment for $1,-333.33 with legal interest on $333.33 from June 27, 1934, and on $1,000 from judicial demand until paid.

The defendants filed an exception of vagueness and an exception of no cause of action. The exception of vagueness was overruled by the court. The exception of no right or cause of action as to the item of $1,000 damages was sustained and was dismissed as to the item of $333.33. The plaintiff took a devolutive appeal to the Court of Appeal for the parish of Orleans from the judgment of the lower court sustaining the exception of no cause or right of action to the item of $1,000 damages.

The defendants in their answer admitted the opening of the account of January 3, 1934; admitted that the account was closed out because of the unfriendly attitude of the plaintiff; admitted that they had written requesting the plaintiff to transfer his account; admitted that a representative of the defendants had telephoned to plaintiff's office to find out the plaintiff's position with respect to defendant's demands to transfer plaintiff's account and that they were informed that the letter was unopened and would be held unopened until plaintiff returned from Chicago; admitted that plaintiff's securities, after settling the account with the defendants, left an amount

due the plaintiff of $4,159.65 and a check to cover that amount was sent to the plaintiff; admitted that they received a letter requesting the defendants to replace the securities which they refused to do. The defendants admitted that the plaintiff opened an account with the defendants on July 29, 1930, at their New Orleans office and signed a customer's contract providing for the closing out of the account after notice or demand whenever, in the defendants' opinion, the plaintiff's account was insufficiently margined; admitted that the plaintiff closed this account on November 28, 1932, and averred that whether or not the customer's contract was returned it ceased to remain in force and effect; admitted that plaintiff opened an account on January 13, 1934, with the defendant, and while the records of the defendant do not show the execution of a customer's contract to cover the new account, nevertheless the contract would be subject to the same rules and regulations in force and effect governing similar transactions, among which was the right of the defendant to demand payment of the amount loaned to the plaintiff on the plaintiff's securities; the defendant averred that they had written the plaintiff on two different occasions requesting him to transfer his account, and the plaintiff failing to transfer his account; the defendant informed the plaintiff that they would close out the account around the close of the market of June 27, 1934; that plaintiff failing to meet the request the defendants closed out the account and remitted the balance of $4,159.65 to the plaintiff; that plaintiff having accepted the check is estopped to complain against the action of the defendants and, in the alternative, that, if the original customer's contract signed by plaintiff on July 20, 1930, should be held to be in force and effect, then in that event the contract would be one of the mandate, terminable at will, and that the defendant acted within their rights in closing out the account.

At trial had the lower court rendered judgment dismissing the plaintiff's suit, from which judgment the plaintiff took a devolutive appeal to the Court of Appeal for the parish of Orleans.

■ On April 5, 1937, the Court of Appeal affirmed the judgment of the district court, sustaining the exception of no cause or right of action as to the item of $1,000 damages, and reversed the judgment of the district court of plaintiff's suit as to the item of $333.33 and rendered judgment in favor of the plaintiff for that amount. On May 3, 1937, the Court of Appeal granted a rehearing as to the item of $1,000 and denied a rehearing as to the item of $333.33. On June 14, 1937, the Court of Appeal reversed its former decree maintaining the exception of no cause of action as to the item of $1,000 and ordered the cause remanded to the lower court for the taking of evidence. The application for the writs herein was filed in this court on May 28, 1937, prior to the decision of the Court of Appeal of June 14, 1937, wherein the cause was remanded to the lower court as to the item of $1,000. This suit having been remanded to the lower court as to the item of $1,000 was therefore not finally determined by the Court of Appeal. In that event the only question before us is whether or not

the judgment of the Court of Appeal as to the item of $333.33 is correct.

The relators herein contend (1) that the rights and liabilities of the parties herein in this suit are determined and governed by the laws of the state of New York, (2) that under the law of the state of New York, the relators, having given the respondent notice of eight days of its desire to terminate the relationship of broker and customer, clearly acted within their legal rights in closing the respondent's account when he failed to comply with their demand to transfer the account to some other broker or bank, (3) in the alternative, and only in the alternative, that if the court should conclude that the rights of the parties in this suit are to be governed by the laws of Louisiana, then the relationship of pledgor and pledgee as to stocks purchased on margin did not exist herein, because the requisites of a valid pledge in accordance with the provisions of the Civil Code are not satisfied and fulfilled, and (4) that the judgment of the Court of Appeal is erroneous as to the item of $1,000 for the reason that plaintiff's petition as to that item does not disclose a cause of action.

The contract entered into between the plaintiff and the defendant on July 23, 1930, reads as follows:

"Customer's Contract

7/23/1930.

"Fenner & Beane,
"New York, N. Y.
"Sirs:

"In consideration of your serving as my brokers I agree that you may handle my business in the following manner:

"First: That my transaction with you shall be subject to the rules and customs of the exchange on which the same may be executed.

"Second: That my debit balances with you at the end of each month shall be charged with interest at the average rate paid by you on your general loans for such month, plus any special rate that you may have to pay thereon, together with your usual charge to customers for maintenance of credit facilities.

"Third: That you may lend or pledge separately or in your general loans, in such manner and for such sums as you may see fit and without notice to me, all stocks, bonds, commodity contracts and things of value held in my accounts with you whenever I am indebted to or have a short position with you.

"Fourth: That you may close my accounts in whole or in part after previous notice to or demand on me at my address, whenever in your opinion my accounts are insufficiently margined. And in the exercise of this right you may make the purchases and sales as may be required and at such times and places as you may deem best and without advertising or prior notice to me thereof.

"This agreement shall cover purchases and sales of securities, commodities and contracts now or hereafter had by me through you on any exchange or market and shall continue until revoked by me in writing, but such revocation shall not effect any purchases and sales theretofore

carried in my accounts and the closing thereof.

"Yours very truly,

"[Signed] W. S. Rembert, Customer. "This card to be returned to me when a/c is in balance.

"[Signed] W. S. Rembert."

The plaintiff and defendant operated under this contract until the plaintiff of his own accord discontinued business under this contract on November 28, 1932. On January 3, 1934, the plaintiff again began to conduct business with the defendants. The defendants claim that the written agreement had terminated and that this transaction would be governed by the customs and practice of the brokerage business and brokers generally. Our conclusion is that the contract entered into on July 23, 1930, was still in force and effect and governs this transaction. The defendants required the plaintiff to sign the contract in the first instance giving them the right to "lend or pledge * * * all stock, bonds * * *" It is conceded that the defendants required this right and could only obtain it by written agreement. From all the evidence herein the transactions were merely a continuation of the original contract. In the photostatic copy of the original contract, introduced by the defendants as Fenner No. 1, has written on the bottom and signed by W. S. Rembert "this card to be returned to me when a/c is in balance." We also find in the record a subpoena duces tecum ordering the defendants to produce the contract of July 23, 1930. This shows that the defendants

held the contract and that the intention of the parties all along had been to operate under this contract. It is conceded that the accounts were not closed for being insufficiently margined. Relators contend that the contract contains a specific provision to the effect that the account would be executed upon the New York's Stock Exchange in accordance with the rules, regulations, and customs of the exchange and that all the securities carried in the account were purchased and sold on the New York Stock Exchange, in consequence of which the rights of the parties with reference to the contract would be governed by the laws of the state of New York. The defendants cite Meyer, in his work on the law of stock brokers and stock exchanges, page 677, which reads as follows: "Stock and commodity transactions are ordinarily governed by the law of the place where the order is executed, irrespective of where the order is given or the parties reside." Citing a number of authorities.

The plaintiff also cites Meyer, page 254, as follows:

"It is well settled law that in providing these funds the broker does not act as agent of the customer. The funds which he provides are his own. Accordingly, he becomes the creditor of the customer, and since he holds the customer's securities as collateral, there is created between the customer and himself the relation of pledgor and pledgee.

"In exercising his ordinary functions in marginal transactions, therefore, the bro-

ker acquires, so to speak, a dual personality. When he executes the order he is the customer's agent, buying from or selling to a third party. When he provides funds to complete the order and to carry the securities purchased, he deals with his customer as a principal, advancing his own money and retaining the customer's property as security, with all the rights and obligations which attach to an ordinary loan of money on the security of personal property.

"This duality of the stockbroker's functions has been described by the Court of Appeals, as follows:

" 'The position of the broker is twofold. Upon the order of the customer, he purchases the shares of stocks desired by him. This is a clear act of agency. To complete the purchase, he advances from his own funds, for the benefit of the customer, ninety per cent of the purchase money. Quite as clearly, he does not in this act as agent, but assumes a new position. He also holds, or carries the stock for the benefit of the purchaser, until a sale is made by the order of the purchaser, or upon his own action. In thus holding or carrying, he stands also upon a different ground from that of a broker or agent, whose office is simply to buy and sell. To advance money for the purchase, and to hold and carry stocks, is not the act of a broker as such.' (Markham v. Jaudon, 41 N.Y. 235, at p. 240)."

The plaintiff also cites Meyer at page 256, as follows:

"It is * * * well settled that the lien extends to securities purchased by the broker for the customer's account, although no express pledge of such securities has been made. Although a pledge of personal property requires the deposit of the property by the pledgor with the pledgee, the effect of the purchase of securities on margin and their retention by the broker is the same as if they had been actually delivered to the customer and then redelivered by him to the broker."

"While the terms of a pledge require, that there should be a delivery of the article, it is not necessary that there be an actual manual delivery. * * * 'So if the pledgee has the thing already in possession, as by a deposit or loan, the very contract transfers to him by operation of law, a virtual possession thereof, as a pledge, the moment the contract is completed.' (Story Bail., § 297, and Auth. supra.) * * * To have delivered the certificates to the plaintiff, and that the plaintiff should then have returned them to the defendants, to be held by them as security for the advance in their purchase, would leave the parties in precisely the same situation as if the defendants had retained them for that purpose; the form of a delivery to the plaintiff, and a redelivery by him to the defendants, being waived by agreement of the parties." Markham v. Jaudon, 41 N.Y. 235, at pages 241, 242.

The Court of Appeal in its decision quotes from Meyer in subsection 3 of section 41 as follows:

"We have seen that in executing an order, the relationship of the broker to his customer is that of agent and that the

broker's obligations and rights are governed by the general principles of agency.

"In the purchase of securities on margin, however, the execution of the order is only the first function of the broker. The next and equally important one is providing of funds necessary to acquire the securities, and to carry them until the customer orders them sold. When security purchases are made on margin, the customer in some instances furnishes a portion of the purchase price and the broker furnishes the remainder. In other instances, and perhaps the more frequent ones, the broker furnishes the entire purchase price and receives from the customer a' deposit of other securities as collateral. In either case, however, the broker is required to furnish funds for the completion of the purchase.

"It is well settled law that in providing these funds the broker does not act as agent of the customer. The funds which he provides are his own. . Accordingly, he becomes a creditor of the customer and since he holds the customer's security as collateral, there is created between the customer and himself the relation of pledgor and pledgee."

Article 3165 of R.C.C. reads as follows:

"The creditor can not, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge

was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain in force and be subject to the provisions of this act."

The evidence in this case shows that the contract was entered into in the city of New Orleans; that the parties to the contract reside in the city of New Orleans; that the account was opened in the city of New Orleans; that most of the pledged securities were delivered to the defendants in the city of New Orleans; that most of the pledged securities were continuously in the physical possession of the defendants in the city of New Orleans, from the date of their delivery by the plaintiff to the defendant until the account was closed; that the account was closed in the city of New Orleans; and that all transactions between the parties with reference to the account itself was negotiated and carried on in the city of New Orleans. It is true the contract provides that transactions under this contract with reference to the purchase and sale of stocks, etc., shall be subject to the rules and customs of the exchange on which they may be

executed. This suit does not involve any transaction to be executed by the defendant on behalf of the plaintiff on any market. The present suit involves only the closing of the account between the plaintiff and the defendants. The selling of the securities to close the account is a mere incident thereto. There could be no question that; in so far as the account is concerned, between the plaintiff and the defendants, it was intended and so treated by the parties themselves to be a transaction in Louisiana, governed by the laws of Louisiana. The account being governed by the laws of Louisiana, in the absence of any agreement to the contrary, the securities could not legally be sold to satisfy the debt of the plaintiff except as provided for in R.C.C. art. 3165. The only agreement to the contrary, provided for in the contract, for the sale of plaintiff's securities, is where the account is insufficiently margined. The securities were not sold for that purpose, but were sold for the reason that the defendant did not care to continue the account. In the case of Smith v. Macon Ridge National Bank, 151 La. 559, 92 So. 57, it was held to the effect that one to whom property is pledged in order to sell it legally to satisfy the debt for which it was pledged must do so by means of legal process unless the pledgor authorizes its sale otherwise, citing R.C.C. art. 3165.

The defendants having sold the pledged securities of the plaintiff contrary to an express provision of law, would be liable to the plaintiff for whatever damages might accrue. The evidence shows that the plaintiff in repurchasing securities of

like kind had to pay $333.33 more than the amount realized by the defendants from the illegal sale of the securities.

We therefore conclude that the judgment of the Court of Appeal is correct and should be affirmed.

For the reasons assigned the judgment of the Court of Appeal is affirmed, and the writs herein issued are recalled. The defendants to pay the cost of this proceeding.

HIGGINS, J., takes no part.