[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 312 
Plaintiff, Barnett Cusachs, seeks to obtain in this action the annulment of a judicial sale of a certain certificate of stock (No. 4) evidencing 339 shares of G. Cusachs Sons, Inc. He impleads as defendants Maurice Cusachs, Gaspar Cusachs and Louis Knop, Jr., civil sheriff of the Parish of Orleans. *Page 313 
The grounds for the alleged nullity are (1) that the proceedings under which the seizure and sale occurred were fatally defective and illegal, and (2) that the adjudication was obtained by means of a conspiracy to defraud him.
The district court, after trial of the case, rejected the demands of plaintiff at his costs, and ordered dissolved a previously issued temporary restraining order that prevented the completion of the attacked sale. Also, there was judgment in reconvention in favor of Maurice Cusachs recognizing him as the pledgee of said stock certificate for the sum of $6676.83, with six per cent per annum interest thereon from August 11, 1939, and entitled as such to be paid that amount from the proceeds of the sale by privilege and priority over all other persons.
Plaintiff appealed devolutively from the judgment. A motion to dismiss the appeal, filed by appellees Maurice and Gaspar Cusachs, was previously considered by us and denied on December 30, 1942.
Barnett Cusachs and the two principal defendants, Maurice and Gaspar Cusachs, are brothers. On the death of their father, and from him, they inherited a sizable estate, the greater part of which they used in organizing a commonly termed closed corporation known as G. Cusachs Sons, Inc. Its capital was $102,000, represented by 1020 shares of stock that were issued to the three brothers in the proportion of 340 shares to each.
After the corporation's organization Barnett experienced certain financial reverses *Page 314 
in other ventures, and he sought and obtained assistance from his brother Maurice which consisted of Maurice's advancing of funds and also the endorsing of notes on which loans were obtained from the Whitney National Bank of New Orleans.
As security for the funds advanced and for the contingent liability under the endorsements, Barnett pledged to Maurice 339 shares of his 340 shares of stock in G. Cusachs Sons, Inc. A transfer of the pledged stock on the corporation's books was caused to be made by Barnett on December 1, 1937, Maurice then receiving the certificate No. 4, issued in his name, which was involved in the attacked sale.
On July 14, 1938, a default judgment against Barnett was obtained by the Louisiana Savings Bank Trust Company in suit No. 226,957 on the docket of the Civil District Court for the Parish of Orleans, it being for the sum of $4,800, with eight per cent interest thereon from May 2, 1938, until paid, together with ten per cent upon the aggregate of principal and interest as attorney's fees and all costs. Thereafter the judgment creditor caused the issuance of a writ of fieri facias, and under it Maurice Cusachs was made garnishee. Answering the interrogatories, Maurice denied that he held any rights, credits or other property in which Barnett had an interest. A rule to traverse his answers followed.
This rule was never tried. Instead the Louisiana Savings Bank 
Trust Company and Maurice, on August 11, 1939, entered *Page 315 
into a written agreement in which it was stated that Barnett was indebted unto Morris in the sum of $6,677.83; that such sum, with six per cent per annum interest and ten per cent attorney's fees, was secured by a first lien on the pledged stock certificate; and that the bank would have a secondary pledge of the stock to secure the full amount of its judgment. It was further agreed that any dividends accruing on the stock, the certificate for which was held by the bank, were to be paid first to the extinguishing of Maurice's claim and thereafter to the judgment. Also the contract provided a method for the voting of the stock and recited that the bank should have access to the books of the corporation so that it could be kept informed about the management and conduct of its affairs. No date for the agreement's termination was fixed.
According to the testimony of Maurice, of Gaspar and of the corporation's bookkeeper, Barnett had full knowledge of the agreement and consented to its execution; Barnett, however, denies this.
More than two years elapsed after the confection of that writing without the payment of any dividends to either Maurice or the bank, the reason for this being that the corporation had no surplus from which to pay them. This condition prompted the bank to call upon Maurice for complete satisfaction of its judgment, and he, in turn, notified Barnett of the bank's demand. Barnett promised to make the necessary arrangements to settle the obligation. *Page 316 
The promise was not fulfilled; so Maurice, on April 7, 1942, entered into a written contract with Gaspar which provided that the latter would purchase the judgment from the bank, and, as the substituted plaintiff, cause it to be executed and the pledged stock sold at public auction, paying first from the sale's proceeds the indebtedness of Barnett to Maurice. For the purpose of acquiring the judgment, as stated in the contract, "the corporation, G. Cusachs Sons, Inc., is to borrow the sum of $3500 from the Louisiana Savings Bank Trust Company, the promissory note representing said loan to be endorsed by the parties hereto, and the proceeds of said loan is to be advanced to said Gaspar Cusachs * * *." They further agreed that "at the auction sale the parties hereto will bid for the said shares of stock up to the sum of $14,480, which sum represents the amount due by the said Barnett Cusachs to Maurice Cusachs and the balance of the judgment aforesaid"; and that should they acquire the stock it would be divided in the proportion of one-half to each upon the making of certain described money adjustments.
Pursuant to that agreement the corporation borrowed the mentioned funds and made the loan to Gaspar; and he proceeded to and did purchase and acquire the judgment.
Thereafter the judgment was ordered executed, at the instance of Gaspar; and Maurice was made garnishee. He answered the interrogatories, averring "that he has loaned and advanced to the said B. (or *Page 317 
Barnett) Cusachs and has become liable as an endorser on promissory notes of the said B. (or Barnett) Cusachs in the total sum of $6,677.83, together with 6% per annum interest thereon from the 11th day of August, 1939, and that in order to secure the said advances, the said B. (or Barnett) Cusachs transferred to respondent 339 shares of the capital stock of G. Cusachs Sons, Inc., now represented by Certificate No. 4, and respondent has a lien and privilege upon the said shares of stock for the repayment of the sum aforesaid of $6,677.83, together with 6% per annum interest thereon from August 11, 1939."
Whereupon, on written motion of Gaspar, the court decreed as follows:
"It is ordered that the said Maurice Cusachs deliver to the Civil Sheriff for the Parish of Orleans the said certificate No. 4 for 339 shares of G. Cusachs Sons, Inc., and let the same be sold at public sale to pay and satisfy first the said sum of $6,677.83 with 6% per annum interest thereon from August 11, 1939, due the said Maurice Cusachs, and second to pay and satisfy the judgment herein rendered on the 8th day of July, 1938, and signed on the 14th day of July, 1938."
The certificate of stock was delivered to the sheriff, and on April 13, 1942, he notified Barnett, personally and in writing, that in three days from that date he would proceed to advertise and sell it according to law "to pay and satisfy the writ issued in this case, say the sum of $4800 with interest and costs, unless the same is immediately paid." The advertisement appeared *Page 318 
on four different dates, commencing April 18, 1942, and ending April 29, 1942.
On this last date the property, which was appraised at $9,000, was adjudicated to Gaspar Cusachs under his bid and for the price and sum of $8,000. Barnett was among those present at the sale.
This suit followed, Barnett challenging herein the legality of the proceedings and attributing fraud to his brothers, Maurice and Gaspar.
Plaintiff complains of the court's order for a sale of the certificate to pay and satisfy first the claim of Maurice in the sum of $6,677.83, with interest, and secondly the judgment, he referring to that instrument as an "erroneous ex parte money judgment in favor of Maurice and against Barnett." In this connection, although admitting that Maurice was his creditor and the pledgee of the stock, he insists and testifies emphatically that he did not owe to Maurice nearly so much as is claimed.
The court's decree, as we construe it, was not a money judgment against Barnett; it merely ordered a sale of the property subject to the pledge of Maurice, shown in the answers to the interrogatories to be in the named sum. That amount was not at all conclusive as to Barnett; and if he had proved, through intervention and opposition as he had the right to do, that the claim was excessive undoubtedly modification of the order would have resulted. The opportunity to make such a showing was clearly his, for he received personal *Page 319 
service of the notice of seizure fifteen days prior to the date of sale; but he did not avail himself of it. True, the notice served on him, as well as the advertisements, made no mention of the pledge claim; this seems unimportant, however, in view of the fact that he was well aware that his stock was then held by his brother as pledgee.
Further, plaintiff says that the ex parte judgment prevented him "from bidding on the stock sufficient to discharge the judgment against him, without first discharging a claim which he denies is due." Obviously there is no merit in this contention. There would have been no difficulty in his offering the desired bids, protesting all the while the amount of Maurice's claim; and if he had become the successful bidder the necessary adjustment between him and Maurice could have been made in a proper proceeding before a completion of the sale.
It is also argued by plaintiff that "Maurice, as pledgee, was, as a matter of law, powerless to cause the sale of the certificate pledged before he had reduced his claim to judgment in the ordinary course of law"; and he cites Civil Code Article3165, and Rembert v. Fenner Beane, 188 La. 385, 177 So. 247. These cited authorities compel a pledgee, before he can effect a sale of the pledged property, to obtain a judgment in the ordinary course of law and to observe the same formalities required in ordinary cases. But it is also well settled, as said in First National Bank of Ruston et al. v. Lagrone, 166 La. 626,117 So. 741, 744: "That property of any *Page 320 
kind held in pledge by a creditor may be seized at the instance of another creditor of the pledgor, and sold subject to the claim of the pledgee. Williams v. Schooner St. Stephens, 2 Mart. N.S., 22; Flournoy Co. v. Milling, 15 La.Ann. 473; Auge v. Variol, 31 La.Ann. 865; Pickens v. Webster, 31 La.Ann. [870], 875; Horner v. Dennis, 34 La.Ann. [389], 390; Bourg v. Lopez, 36 La.Ann. [439], 440; Kirkpatrick v. Oldham, 38 La.Ann. 553; Renshaw v. His Creditors, 40 La.Ann. [37], 41, 3 So. 403; Succession of Lanaux, 46 La.Ann. 1036, 15 So. 708, 25 L.R.A. 577."
The procedure resorted to herein, therefore, is authorized; and it will not be disturbed unless fraud is shown to have attended the seizure and sale.
We do not find, as plaintiff suggests, that Maurice terminated and extinguished the pledge by his execution of the agreement with the bank on August 11, 1939, and by his delivery of the certificate to it. Insofar as Barnett was concerned, Maurice was still the pledgee of the property.
This brings us to a consideration of the more serious complaint made by plaintiff, namely that his brothers Maurice and Gaspar conspired to defraud him. The impression that one gains on the first reading of the record is that perhaps undue advantage was taken of Barnett; but after our thorough study and careful weighing of the disclosed facts and circumstances we are satisfied that the course followed by the principal defendants was proper and warranted. *Page 321 
Admittedly, Barnett was indebted to Maurice to the extent of several thousand dollars for funds advanced, and, additionally, there existed the contingent liability because of the endorsement of the notes, for all of which the certificate was pledged. The bank's judgment had been obtained without contest and was indisputably valid and binding. Under it the enforced sale of the stock would have occurred in 1939, had not the written contract between Maurice and the bank been entered into.
Following that agreement, a period of more than two years elapsed without Barnett's attempting to discharge his obligations and redeem his property. Then the bank demanded settlement, and still Barnett did not or could not make the necessary arrangements. Rather than permit the bank to sponsor the execution and sale, as no doubt it would have done, Maurice and Gaspar decided to purchase the judgment if possible and under it themselves bring about a judicial disposition of the stock. They most probably thought, since the holding of a sale was inevitable, that their interest would be best served by acquiring the judgment, having in mind the effecting of a saving to them and placing them in a better position to bid on the certificate of the closed corporation in which they held the remaining stock.
The fact that the funds used were borrowed by the corporation and then lent to Gaspar was of no moment. That was a matter between defendants and the corporation, *Page 322 
of which they were then the controlling stockholders. It was important that a public auction of the certificate be held at which no stifling or restraining of bidding would occur. There was such a sale. It was the same kind as would have taken place had the judgment been enforced by the bank; hence, we cannot perceive how Barnett Cusachs was in any manner prejudiced by its being carried on at the instance of the bank's assignee, Gaspar Cusachs.
Respecting the reconventional demand of Maurice Cusachs for recognition of his pledge, the judgment, as before stated, recognizes it for the sum of $6,676.83, with interest. The evidence in the record does not fully support this amount; neither does it show exactly what is due by Barnett to Maurice. Consequently, we think the case should be remanded for the restricted purpose of receiving evidence on, and having the district court determine, the exact amount of such indebtedness.
For the reasons assigned the judgment insofar as it concerns the mentioned reconventional demand of Maurice Cusachs is reversed and set aside and the case is remanded for further proceedings according to law and consistent with the view herein expressed; but in all other respects it is affirmed at appellant's costs.
HIGGINS, J., concurs in the decree.
ROGERS, J., absent. *Page 323