## No. 12,568.

### METROPOLITAN BANK vs. AARONS-MENDELSOHN COMPANY, LTD.

#### ON MOTION TO DISMISS.

The extended return day for the filing of the transcript of appeal occurring on a *dies non*, the appellant is entitled to the whole of the next day to file same, or to apply for an additional extension—the extended return day not having occurred in term time.

#### ON THE MERITS.

In a suit to make the defendant the purchaser of property from insolvent debtors, liable on the ground, the defendant aided the debtors in defrauding their creditors, the price paid by him must have the weight given to it in the revocatory action

If the price is adequate the sale will not be set aside because the debtors applied the price to pay one of the creditors, though the purchaser may have been informed of that intended application of the price.

The revocatory action is the remedy under our law for creditors seeking relief against sales or other dispositions of the debtor's property in fraud of creditors. Civil Code, Arts. 1970, 1978, 1982, 1989, *et seq.*

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Lazarus, Moore & Luce* and *Dinkelspiel & Hart* for E. Blanc, Receiver, Plaintiff, Appellant.

*Farrar & Lemle* for Elias Aarons, Defendant, Appellee.

Submitted on motion to dismiss, December 13, 1897.

Motion overruled and opinion handed down December 28, 1897.

Argued and submitted May 5, 1898.

Opinion handed down June 13, 1898.

Application for rehearing withdrawn by consent November 10, 1898.

## ON MOTION TO DISMISS APPEAL.

WATKINS, J. The ground upon which the appellee seeks to dismiss this appeal is that the appellant's second extension of the return day thereof had neither been requested of this court or granted by it until after the date when the first extension had expired—the order of the court granting the first extension having extended the time for the return of the appeal to the first Monday and first day of November, 1897, and that granting the second extension having been made on the second day of November, 1897.

The application for the second extension of the return day of the appeal was filed on the second day of November, 1897, and the order of this court granted an extension on and allowed three judicial days thereafter within which to file the transcript of appeal—that is, until the 4th of November, 1897, the court being in session. And in conformity with that order the transcript of appeal was filed in this court on the 4th of November, 1897. The first Monday was the first day of November, 1897.

True it is that in the first application which was made by the

appellant for the extension of the return day for the pnrpose of affording the clerk time to prepare tbe transcript, the first Monday of November, 1897, was mentioned as the date to which the time was extended, and that the order of the court conformed to said suggestion.

But it is equally true that said averment and order were in exact conformity with the language of the Constitution, viz.:

"The Supreme Court shall hold its sessions in the city of New Orleans from the *first Monday in the month of November*," etc. Art. 84.

That it so happened this year, 1897, that the first Monday of November occurred upon the *first day* of that month, relieves the appellant from the necessity of strict compliance with the order of court extending the return day—the *first day of November* being under the law a day of public rest, and a legal "holiday," or *dies non*.    Act 93 of 1892.

That statute declares that all commercial paper which shall by law or commercial usage be required to be protested for non-payment "shall be deemed to be due, and shall be due and payable on the first day not a Sunday or legal holiday succeeding the third, or last day of grace, if the third or last day of grace be a Sunday or legal holiday," etc.

It seems but reasonable and just that a like interpretation should be by this court placed upon this statute with regard to the return day for appeals, in that it equally affects all judicial proceedings, and stays and restrains judicial action thereon upon *dies non*.

The decision of the court in Bienvenu vs. Factors and Traders Insurance Company, 28 An. 901, is not in point, for the court say:

"The question presented is, has the appellant a delay of grace for filing the transcript after the day to which the return is extended if such extended return day is *not a judicial* though a *legal day?*

. "The question must be answered in the negative.

"It is well settled that no days of grace are allowed after the day to which the extension is granted.

"The further time granted for bringing up the appeal, under Art. 883, C. P., is simply an extension of the days of grace, a postponing of the return day by order of the court, which becomes fixed, if not moved or postponed, by *antecedent order of the court.*"

Counsel for the appellee cites and much relies upon the decision of our immediate predecessors in Sun Mutual Insurance Company

vs. Bynum, 32 An. 28, and it is true that their citation therefrom does support their proposition, but the quotation made is from the syllabus and not from the opinion.

The court in that opinion refers to the case of Surrat vs. L'Hote, then recently decided, and said:

" We held that when an extension is granted to a day *not in term time*, the transcript may be filed on the first day of the ensuing term, and, as here, the term of this court commences on the first Monday in November and lasts until the end of May, and as it was *duriny term time* that the delay was extended and *exptred*, the appellants could have preserved their right by simply applying for a further extension."

It is plain that the syllabus of that case disagrees with the text.

In that case the return day was extended during term time, and that day arrived and the delay *expired in term time;* but in the instant case the delay expired on a day when the court was not in session and had not convened because the day fixed for the extension and for the convocation of the court was not a legal day but a *dies non*.

Under this state of facts it was utterly beyond the power of the appellant to have obtained a further extension, because the court had not convened for the term, and could not convene on the date fixed in the Constitution because it was *not a legal day*.

In State *ex rel.* Luling vs. Judge, 24 An. 333, it was said by the court:

" It appears that the return day as extended was the 28th of February, which was Sunday.    *    *    *

" The return day occurring on Sunday, we think the appellant was entitled to the whole of the next day to file his appeal."

Applying the principle announced in that opinion to this case, the appellant was legally entitled to apply on the day he did for an additional extension of the return day.

In our examination of the case cited, and others, we have found no countervailing authority.

The motion to dismiss is not well grounded.

It is therefore denied.

### ON THE MERITS.

MILLER, J.   This is an appeal by the receiver of the Aarons-Mendelsohn Company, Limited, from the judgment dismissing his demand against Elias Aarons for five thousand dollars.

Bank vs. Aarons-Mendelsohn Co., Ltd.

The corporation was organized in 1892, Augustus Aarons and Charles Mendelsohn being the principal shareholders; Elias Aarons, against whom this suit is directed, and another party holding one share each, and at a later period two others became subscribers to the stock. In 1895 the corporation became embarrassed; sundry suits were begun, and attachments against the corporate property were issued, the effect of which was to close the business of the corporation, its charter having been decreed forfeited on the return *nulla bona* on one of the executions. The debts of the company were between forty and fifty thousand dollars; its assets were the stock of merchandise sold at the sheriff's sale for thirty-three hundred dollars leaving, after satisfying the lessor's claim, eighteen hundred dollars; the bills receivable and book accounts were purchased by Elias Aarons for one thousand five hundred dollars, and the tobacco pledged to various creditors were sold by them to him for the amount of the debts for which the tobacco was pledged. After all these transactions the receiver was appointed, brought this suit against Elias Aarons, and from the judgment against the receiver he appeals.

The petition of the receiver alleges that the officers of the corporation, its shareholders and the defendant, related or connected by marriage, combined and colluded to place the property of the corporation beyond the reach of its creditors; the corporation being insolvent, to the knowledge of defendant, an employee, and cognizant of the financial condition of the corporation; that in furtherance of this combination the defendant, under color of a collusive and fraudulent sale about the time the receiver was appointed, took possession of the bills receivable and accounts of the corporation and is receiving and illegally appropriating the collections; that there are no other assets except of inconsiderable, if of any value, to pay the creditors, and the petition prays for judgment against defendant for five thousand dollars. The answer is, substantially, the general issue, with the averments of the purchase of the stock of merchandise of the corporation at sheriff's sale under the executions of their creditors; that he then purchased the book accounts and bills receivable for a fair price paid by him; and the validity of the sale is insisted upon, but the answer avers that save the amount collected, twenty-four hundred dollars, the assets are worthless, and that defendant is willing to return all he purchased, including all collections, for an amount equal to the price paid, and for his services and time in making the collections.

In argument the suit is presented to us as one in the nature of the revocatory action combined with that for damages for the alleged wrongful acts of the defendant in aiding the debtors to place their property beyond the reach of their creditors. The aspects of this litigation naturally suggest the revocatory action, or that *en declaration de simulation*, deemed by our law and jurisprudence ample to secure creditors against all acts of their debtors calculated to deprive creditors of recourse on the debtor's property. Civil Code, Arts. 1970, 1978, 1982, 1989, *et seq*. We perceive in the briefs the suggestion that the usual actions to avoid the prohibited acts of insolvent debtors was not deemed applicable. We have not without some doubt as to the plaintiff's right to the remedy plaintiff selects, taken the suit as he has presented it. To enforce the demand the orgnnization and course of business of this corporation has been exhibited in testimony and argument; thus we are apprised the corporation was organized in 1892; that it was preceded by a firm composed of defendant and his brother, who, with others, afterward formed the Aarons-Mendelsohn Company, Limited; that defendant's brothers, Augustus and Charles Mendelsohn, became the principal shareholders, Augustus Aarons coniributing as his part of the capital the interest of defendant in the previous firm, purchased by Augustus Aarons; that Elias Aarons, the defendant, owning at one time one share of the stock, claims to have disposed of it, but was in the employ of the corporation to its close. It is also brought to our notice that the principal attaching creditor was a relative of the members of the corporation; that another creditor was paid to the exclusion of others the entire one thousand five hundred dollars, derived from the defendant's purchase of the assets of the corporation, and there is testimony to the effect that the defendant, owing to his relationship and intimacy with the shareholders, enjoyed advantages in respect to the purchases of the merchandise and assets of the corporation not possessed by others, and the testimony is that in these purchases he had the advice and encouragement of the shareholders. In an action based on an alleged combination and conspiracy it was, doubtless, deemed proper to introduce the mass of testimony we find on this subject in the record, but, in our view, the investigation we are to make must mainly depend in their result on the purchases by defendant of the property of the firm.

In the petition it is the sale of the accounts and bills receivable

that is specially assailed, and it is mainly in relation to that sale, as we read the petition, that the judgment is claimed against the defendant for five thousand dollars. Whether in the revocatory action, or in any form of controversy involving defendant's liability to creditors arising out of that sale, the question of the value of the assets would be the prominent inquiry, ff not the test. According to the testimony the assets had accumulated since 1892, though a considerable amount was the result of more recent sales. It readily occurs that the assets of a commercial firm, in great part in their origin, dating three years back, are not apt to have anything like the value conforming to their face. The testimony is to the effect the great mass of these assets were worthless; that with two years efforts at collection there had been realized of all the assets but twenty-four hundred dollars, and defendant claims and testifies the time and expense of collecting debts due by country, as well as city debtors, equaled the excess of collections over the price paid, and we have in the record the defendant's offer to return all the assets, including collections for reimbursement of the price and the amount claimed for the expense of collection. The testimony, it is true, comes from the shareholders and the defendant, but it is upon this testimony the case has been presented and must be determined. It is claimed in argument that defendant having aided the debtors in putting their property beyond the reach of their creditors, should be condemned to pay the amount of the collections and be denied any restitution of the price he has paid; and it is insisted we can grant this relief under the prayer for judgment against defendant for five thousand dollars and for general relief. The relief we are asked to afford is the incident of the revocatory action when the defendant participates in the fraud of the debtor, or as the Code puts it, is in fraud as well as the debtor. C. C. Art. 1982. Under the testimony we must conclude the motive and object of the defendant in his purchase was to obtain the accounts, having bought the merchandise and with the view of continuing for himself the business of the debtors. The corporation had the right to sell; he had the right to buy. The law protected him in his contract and his right to reimbursement of the price if the sale should be set aside for inadequacy of the price. Civil Code, 1981, 1982. Even under the revocatory action when the sale is set aside, we do not understand the purchaser is to be denied restitution of the price

because the debtor applies the purchase price to pay one of his creditors, and although the purchaser may know the debtor intends that application of the price. This sale as presented to us in the testimony was for a fair price paid by the purchaser, prompted by the purpose to secure the accounts to aid him in the business of the late corporation he proposed to continue. With the best attention we have been unable to perceive the basis for avoiding the sale for inadequacy of price or other cause.

When the corporation failed it had pledged tobacco to the banks and others creditors. The defendant acquired the tobacco from the creditors holding it in pledge for the amount of the pledge debts. We find in the petition no allusion to these acquisitions of the firm's tobacco, but a large part of the testimony is devoted to these transactions, and it is contended in argument that defendant thereby acquired an advantage to the detriment of creditors. It was some months after the failure before the pledged creditor obtained payment. In that period it is claimed, and there is testimony in the record to the effect, that efforts were made to sell the tobacco, and pay the pledge debts, and it was after these efforts failed that the defendant having succeeded to the business of the corporation in part, we infer, the manufacture of cigars, obtained the tobacco on payment of the pledge debts. If in these transactions the creditors of the corporation sustained injury, the revocatory action is adopted to give full relief. But there are before us neither allegations or proof on which we can base any relief in respect to the tobacco pledges.

As to the sheriff's sale of the merchandise, it was open to all bidders. The defendant stood on an equal, but no better footing than all others. The fact he had better means of knowledge of the stock and its value derived from his connection with the late firm and his intimacy with its members give us no basis to hold tha sale void, or as furnishing plaintiff any cause for complaint.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.