[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 628 
The First National Bank of Ruston had three judgments against J.M. Lagrone, for a balance exceeding $10,800, *Page 629 
and for interest, attorneys' fees and costs; and the Bank of Winnfield had a judgment against him for $3,333 and interest, attorneys' fees, and costs. The judgments were rendered by the district court for Grant parish, where Lagrone had his domicile. The two banks obtained writs of fieri facias, on which the sheriff of Caddo parish undertook to levy upon 250 shares of stock in a corporation called Colfax Lumber Creosoting Company, Inc., represented by two certificates of stock in the possession of the widow of the late William Edenborn, in Caddo parish. Mrs. Edenborn was made garnishee, and was served with interrogatories, individually and as the representative of the William Edenborn estate. She had taken possession of the estate unconditionally and was therefore subject to all of the obligations and entitled to all of the rights of the deceased. Answering the interrogatories, Mrs. Edenborn denied that she was indebted to Lagrone, but admitted that she held in her possession a stock certificate No. 16, for 50 shares of stock in the Colfax Lumber Creosoting Company, Inc., issued in the name of Lagrone's wife, Mrs. Della Bright Lagrone, and stock certificate No. 17, for 200 shares of stock in the Colfax Lumber Creosoting Company, Inc., issued in the name of J.M. Dowden. She averred that she understood that J.M. Lagrone had no interest in the 50 shares of stock standing in his wife's name, but understood that he owned the 200 shares standing in the name of J.M. Dowden. She averred that both certificates of stock were held by her in pledge to guarantee the performance by Lagrone of certain obligations under a contract with the late William Edenborn, dated May 20, 1923; and she annexed a copy of the contract to her answers to the interrogatories. Each bank filed a petition to traverse the answers of the garnishee, and a rule upon her to show cause why the two certificates representing the 250 shares of stock should not be surrendered *Page 630 
to the sheriff of Caddo parish to be sold to satisfy the banks' judgments. The banks prayed for and obtained service of the rule upon J.M. Dowden and upon Mrs. Lagrone, as well as upon the garnishee. The banks alleged in their petition for the rule that the 50 shares of stock standing in the name of Mrs. Lagrone had been transferred to her by her husband without any consideration, by a fraudulent dation en paiement, made for the purpose of shielding the stock from the pursuit of the creditors of Lagrone, and particularly the two banks, and that the pretended dation en paiement was null, not only because it was made without any consideration and was fraudulent, but also because the stock was never delivered to Mrs. Lagrone. They alleged that the 200 shares of stock standing in the name of J.M. Dowden also belonged to J.M. Lagrone, as understood by the garnishee, and that the stock was placed in Dowden's name merely to aid Lagrone in avoiding the payment of his debts, and particularly the banks' judgments. They averred that Lagrone did not owe the deceased, Edenborn, any obligation, under their contract, that would support a pledge of Lagrone's stock; that every obligation in favor of the deceased had been fulfilled by the organizing of the corporation styled Colfax Lumber Creosoting Company, Inc.; and that if any obligation on the part of the Colfax Lumber Creosoting Company, Inc., remained unperformed the performance thereof was under Edenborn's control until he died and thereafter under the control of Mrs. Edenborn, as owner of the controlling stock in the corporation.
Answering the petitions of the two banks, Mrs. Edenborn insisted that the pledge of the 250 shares of stock to guarantee the performance of Lagrone's obligations under the contract was a valid pledge, and that the stock was not subject to seizure and sale so long as the contract remained unfulfilled, and, *Page 631 
in any event, not to the prejudice of the pledgee.
Mrs. Lagrone excepted to the jurisdiction of the court, ratione personæ, and, with reservation of the exception, pleaded that the banks' proceeding was a collateral attack upon the authentic act of dation en paiement, transferring the stock to her, and that the banks had no just cause or right or action; and, answering the rule, with reservation of her exceptions, she relied upon the act of dation en paiement as the evidence of her ownership of the 50 shares of stock.
J.M. Dowden did not answer the rule, or make any appearance in the case.
The proceedings of the two banks were consolidated, by agreement to try one of the cases, with the understanding that the judgment to be rendered should control both. The court gave judgment in favor of the banks, ordering the 250 shares represented by the two stock certificates delivered to the sheriff of Caddo parish, to be by him sold to satisfy the banks' judgments, but subject to the pledge in favor of Mrs. Edenborn to secure the performance of the obligations of J.M. Lagrone under his contract dated May 20, 1923. It was therefore further ordered that the sheriff should, after transferring the stock to the purchaser at public sale, by indorsement on the stock certificates, return them to Mrs. Edenborn to be retained by her in pledge to secure the obligations of Lagrone under his contract of May 20, 1923.
Mrs. Lagrone appealed from the decision. J.M. Lagrone also asked for an appeal, although he was not theretofore a party to the proceedings making Mrs. Edenborn garnishee and seizing the stock certificates. The district judge refused to grant Lagrone an order of appeal, but, on his application to this court for mandamus, he was granted a right of appeal. First National Bank v. Lagrone, 164 La. 907, 114 So. 832. Thereupon the two banks took a devolutive appeal. Mrs. Edenborn *Page 632 
did not appeal, but, after filing a brief in this court in which she argued and prayed that the judgment should be affirmed, she filed an answer to the appeal, contending that the stock seized by the banks was not subject to sale while held by her in pledge to secure the obligations of Lagrone under his contract with Edenborn, dated May 20, 1923. J.M. Lagrone also filed an answer to the appeal taken by the banks, in which he joined in the contention and prayer of Mrs. Edenborn that the stock should not be sold — even subject to the pledge in favor of Mrs. Edenborn.
It is conceded that the 200 shares of stock standing in the name of J.M. Dowden belong to Lagrone, and that Dowden has no interest in them; and the record leaves no doubt that the dation en paiement by which Lagrone undertook to transfer the 50 shares of stock to his wife is null, not only because it appears to have been made without any lawful consideration, but because there was no delivery of the stock to the pretended transferee. Lagrone simply took the stock certificates for the 250 shares, which had been issued originally in his name, and which were already pledged to Edenborn to secure Lagrone's obligations under the contract dated May 20, 1923, and had the certificates canceled, and had a new certificate issued in Dowden's name for 200 shares and another certificate issued in Mrs. Lagrone's name for 50 shares, and returned both certificates to Edenborn to be retained in pledge to secure Lagrone's obligations under his contract of May 20, 1923. Neither Dowden nor Mrs. Lagrone was present or had anything to do with the canceling of the old or the issuing of the new stock certificates. The dation en paiement was made only three days before the first of the judgments against Lagrone was signed, and while Lagrone's attorneys were appealing to the attorneys for the bank to delay the signing of the judgment because of the disastrous *Page 633 
effect which it would have upon Lagrone's credit. Considering those circumstances, and the insolvency of Lagrone, it was incumbent upon Mrs. Lagrone to meet the attack upon the legality of the dation en paiement by showing that it was made for a valid consideration, which she made no attempt to do. We agree with the district judge that the 50 shares of stock standing in Mrs. Lagrone's name, as well as the 200 shares standing in the name of J.M. Dowden, belonged to Lagrone.
There is no merit in the contention, made in Mrs. Edenborn's belated answer to the banks' appeal, that the stock was not subject to seizure and sale while it was held in pledge by Mrs. Edenborn. It is well settled that property of any kind held in pledge by a creditor may be seized at the instance of another creditor of the pledgor, and sold subject to the claim of the pledgee. Williams v. Schooner St. Stephens, 2 Mart. (N.S.) 22; Flournoy Co. v. Milling, 15 La. Ann. 473; Auge v. Variol, 31 La. Ann. 865; Pickins v. Webster, 31 La. Ann. 875; Horner v. Dennis, 34 La. Ann. 390; Bourg v. Lopez, 36 La. Ann. 440; Kirkpatrick v. Oldham, 38 La. Ann. 553; Renshaw v. His Creditors, 40 La. Ann. 41, 3 So. 403; Succession of Lanaux, 46 La. Ann. 1036, 15 So. 708, 25 L.R.A. 577.
The contention made by the banks, as appellants, is that the stock should be sold by the sheriff without regard for the pledge in favor of Mrs. Edenborn; the argument being that there is no obligation on the part of Lagrone, under the contract dated May 20, 1923, which could support a contract of pledge. The contract between Lagrone and Edenborn was an agreement to organize the corporation called Colfax Lumber Creosoting Co., Inc., with an authorized capital of $100,000, to begin business when $60,000 should be paid in, of which Edenborn was to put up $40,000 and Lagrone $20,000. The purpose of organizing the corporation was to work up the timber *Page 634 
on a large tract of cut-over land belonging to Edenborn, and to furnish lumber to two railroads in which Edenborn owned the controlling stock. It was agreed that Lagrone should be employed as manager of the Colfax Lumber Creosoting Company, Inc., at an annual salary of $5,000, payable monthly, as long as such employment should be satisfactory to both parties, and that, in the event of a disagreement in that respect, or in the event Edenborn should desire to discharge Lagrone, or in the event of the death of Lagrone, Edenborn should take over Lagrone's stock in the company at its book value, to be ascertained by an audit of the books. Mrs. Edenborn therefore has the right to take over Lagrone's stock at its book value whenever his employment as manager of the mill shall cease, either at the instance of either of them or at his death, and her right to take over Lagrone's stock at its book value, eventually, ought to be preserved, as it is, by the judgment appealed from.
The only complaints urged seriously by Mrs. Lagrone are, first, that the district court in Caddo parish was without jurisdiction, ratione personæ, to render judgment against her, declaring the dation en paiement void; and, second, that the dation en paiement was not subject to collateral attack, particularly in a summary proceeding. The stock certificates were in Caddo parish, in the possession of Mrs. Edenborn, whose domicile was in that parish. That was the only parish in which the stock could be seized, and the district court of that parish had jurisdiction to compel Mrs. Edenborn to surrender the certificates if in fact they belonged to the debtor, Lagrone. The court therefore must have had jurisdiction also to cite Mrs. Lagrone to make good her claim upon the stock. Being in possession of the pledgee of Lagrone, for his account, the stock was virtually in his possession and was subject to seizure as his property. As to the complaint that the proceeding *Page 635 
was a collateral attack upon the dation en paiement, it is sufficient to say that, according to the proviso in article 398 of the Code of Practice, as amended by Act 46 of 1886, p. 65, if Mrs. Lagrone had opposed the seizure and sale of the stock, the seizing creditors would have had the right, in defense of her claim, to show that her title was simulated or fraudulent. Lahitte v. Frere, Sheriff, et al., 42 La. Ann. 864, 8 So. 598; Whitney-Central National Bank v. Sinnott, 136 La. 109, 66 So. 556. The purpose of citing Mrs. Lagrone was not to obtain a personal judgment against her. The purpose was merely to determine the ownership of the stock, which was seized in the possession, virtually, of the insolvent debtor. For that purpose it was not necessary for the banks to bring a revocatory action at the domicile of Mrs. Lagrone.
The judgments appealed from are affirmed.