## DORSEY et al. v. ASHFORD.
### No. 17018.

Court of Appeal of Louisiana. Orleans.

Feb. 10, 1941.

Parker & Parker, of New Orleans (John E. Parker, of New Orleans, of counsel), for plaintiffs in rule, appellants.

Alvin R. Christovich and Mark W. Malloy both of New Orleans, for defendant in rule, appellee.

JANVIER, Judge.

Henry and Willie Dorsey, having secured against Mrs. Edna G. Ashford a final judgment for $254 with interest, costs, et cetera, found themselves unable to effect amicable collection of the amount due them under the judgment and provoked the issuance of a writ of fieri facias. The civil sheriff seized certain household furniture and effects thought to be the property of the judgment debtor, Mrs. Ashford, and, on the same day, Mrs. Ashford's sister, Mrs. Belle Giurard White, filed with the civil sheriff an affidavit in which she declared her ownership of the seized property. Thereupon the judgment creditors, Henry and Willie Dorsey, filed this rule against the civil sheriff and Mrs. White, alleging the statements made by Mrs. White in her affidavit to be untrue and charging that the pretended sale and transfer of the said effects by Mrs. Ashford to Mrs. White was a mere sham and simulation.

After a trial, there was judgment dismissing the rule, and movers, Henry and Willie Dorsey, have appealed.

In this court Mrs. White has filed an exception of no cause or right of action, attempting thereby to challenge the method of procedure adopted by the judgment creditors, the contention of exceptors being that the sale by Mrs. Ashford to her sister, Mrs. White, may be annulled only in a direct and independent proceeding brought against both parties to the sale and that the attack upon the affidavit of Mrs. White may not be made collaterally, by rule, in the main proceeding in which the judgment sought to be executed was obtained.

It is best to set forth chronologically the events which led up to the filing of this rule. In the original proceeding, Henry and Willie Dorsey sought judgment against Mrs. Ashford. In the district court there was judgment against them, but, on appeal to this court, we, on November 15, 1937, rendered a decree in their favor for $254 with interest and costs, as prayed for. 177 So. 88. Our decree having become final, it was, on January 31, 1938, recorded in the Civil District Court and was made the judgment of that court. On the next day, February 1, 1938, Mrs. Ashford and Mrs. White appeared before a notary public and executed what purported to be an act of sale. In that document it was set forth that, for a cash consideration of $400 paid at the time, Mrs. Ashford sold and transferred to Mrs. White all of the household effects which are involved in this rule. On March 18, 1938, when the writ of fieri facias was issued, Mrs. White executed the above referred to affidavit, in which she claimed to be the owner of the said household effects. Prior to February 1, 1938, counsel for plaintiffs had written to counsel for Mrs. Ashford—who are not the present counsel—concerning the judgment and had indicated an intention to issue execution if Mrs. Ashford should fail to pay the judgment, and, on February 2nd, not knowing of the purported act of sale, counsel had written again, threatening execution.

There are many most suspicious circumstances which we shall later discuss. But first we find it necessary to dispose of the contention that there should have been an independent revocatory action to annul the sale.

The answer to that contention is very simple. In the first place, no attempt is made to annul a sale. It is contended that there was, in fact, no sale; that it was a mere sham—a simulation. And, in the second place, a complete answer to the proposition that there should have been an independent revocatory action is to be found in Article 398 of our Code of Practice, for there it is provided that "* * * in all cases where personal property is seized upon mesne or final process, and is claimed by a third opponent, the seizing creditor may be allowed in his answer to the third opposition to allege and prove his title fraudulent, and the court shall try and decide the issue thus made".

Directing attention for the moment to the article of the Code, from which we have just quoted, we find that the Supreme Court, in First National Bank of Ruston et al. v. Lagrone, 166 La. 626, 117 So. 741, 744, has decided the issue presented. There the court said:

"* * * As to the complaint that the proceeding was a collateral attack upon the dation en paiement, it is sufficient to say that, according to the proviso in article 398 of the Code of Practice, as amended by Act 46 of 1886, p. 65, if Mrs. Lagrone had opposed the seizure and sale of the stock, the seizing creditors would have had the right, in defense of her claim, to show that her title was simulated or fraudulent."

In Southland Investment Company, Inc. v. Michel, 149 So. 177, 178, our brothers of the Second Circuit discussed the question fully and held that, where movable property is involved, there is no doubt of the application of Article 398 of the Code of Practice and that there need be no independent, direct revocatory action in such situation as exists here. There the court said:

"The lower court manifestly is in error in holding that a defendant in a third opposition wherein the title to personal property is involved cannot, by answer, tender the issue vel non of the fraudulent nature of the title set up by the third opponent. The right to do this is clearly granted by article 398 of the Code of Practice, as amended by Act No. 46 of 1886. This article, before being amended, directed that, in cases where the opposition had for its object the setting aside of an order of seizure as having been effected on property not owned by the defendant, but on the contrary owned by the opponent, it must be done by petition and citation, as in ordinary suits, and considered as a separate demand from the suit in which the order was granted. The 1886 act adds the following:

"'* * * Provided, that in all cases where personal property is seized upon mesne or final process, and is claimed by a third opponent, the seizing creditor may be allowed in his answer to the third opposition to allege and prove his title fraudulent, and the court shall try and decide the issue thus made.'

"This amendment specifically provides that, where personal property is seized and claimed by third opponent, the seizing creditor has the right in his answer to allege and prove his title fraudulent, and the court is bound to try and decide that issue. This is exactly what the seizing creditor is seeking to do in this case. She alleges that the title asserted by the third opponent is fraudulent and the transfer to it a fraudulent preference as between the debtor's creditors.

"The case referred to by the lower court was decided prior to the adoption of the 1886 amendment to article 398 of the Code of Practice (Act No. 46 of 1886). It does not reflect the law as it presently exists.

"In First Nat. Bank of Ruston et al. v. Lagrone, 166 La. 626, 117 So. 741, 742, it was held (quoting syllabus) that: 'Under Code Prac. art. 398, as amended by Act No. 46 of 1886, where the wife of a judgment debtor opposes the seizure and sale of stock certificates standing in her name, the seizing creditors have a right, in defense of her claim, to show that her title is simulated or fraudulent.'

"The same doctrine was laid down in Lahitte v. Frere, Sheriff, 42 La.Ann. 864, 8 So. 598, and in Whitney-Central Nat. Bank v. Sinnott, 136 La. 95, 66 So. 551, 556, the Supreme Court, after referring to many decisions rendered by it prior to the 1886 amendment, remarks: 'These decisions, however, were all rendered before the passage of the Act No. 46 of 1886. The last of them was argued and decided at the January term, 1886. Thereafter, in Lahitte v. Frere, Sheriff, 42 La. Ann. 864, 8 So. 598, this court recognized the amendment of article 398 of the Code of Practice by the Act No. 46 of 1886, and held that a creditor could, on proper allegations, attach personal property in the possession of the vendee of the debtor, and could, in answer to a third opposition by the vendee claiming ownership, aver and prove the title to be fraudulent. It was held that a resort to the revocatory action was not necessary in such case any more than in a case of simulation.' * * *

Also, to the same effect, is Bank of Baldwin v. Broussard, 10 La.App. 404, 119 So. 567."

Reverting for the moment to the other reason we have given for reaching the conclusion that we cannot uphold the contention that there should have been an independent, direct revocatory action—that is to say, that there need be no such direct action where the pretended sale was, in fact, no sale at all—we refer to the cases cited on behalf of Mrs. White merely for the purpose of showing that they have no application.

In Merchants' & Farmers' Bank v. Harris, 131 La. 829, 60 So. 362, 363, the court held that there should be an independent revocatory action. But there the intervener "went into possession as owner" and "was on the place and accepted delivery". In the case at bar, there was no conveyance to the possession of the vendee.

In Metropolitan Bank v. Aarons-Mendelsohn Company, Ltd., 50 La.Ann. 1047, 24 So. 125, it was held that the revocatory action was necessary, but there, also, there had been an actual delivery of the property. In other words, there had been a sale which was perfectly good except that it was in fraud of the creditors. In the case at bar the contention is that there never was any sale at all.

In Weathers v. Pecot, Sheriff, et al., 52 La.Ann. 932, 27 So. 538, 539, the court held that there must be a revocatory action to set aside a sale "valid on its face, accompanied by delivery and continuous possession, as owner, to the date of the seizure". In the case at bar there was no such delivery and never was there any possession in the pretended vendee.

When we come to investigate the charge that the pretended sale was a mere simulation, we find so many suspicious circumstances that we think we are justified in repeating what we said in Item Company, Ltd. v. Li Rocchi, 9 La.App. 398, 121 So. 783, 784: "* * * the entire transaction is tainted with suspicion and is pregnant with suspicious circumstances".

Most suspicious of all the circumstances is that, when the purported sale was effected many months prior to the entirely unnecessary notarial document, no change in possession of the household furniture was effected, and Mrs. Ashford remained as completely in control as before. She still had the usus, fructus and abusus. This

circumstance of retention of possession is so suspicious that our Civil Code, in article 2480, provides that, where such a pretended sale without delivery is resorted to, the burden of establishing its validity is upon the parties to the transaction:

"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."

We commence, then, with the presumption that the parties were in bad faith and that the sale was a simulation and with a realization of the fact that the burden is on Mrs. White to overcome this presumption.

Let us look for the moment at the formal notarial act of sale. There was no necessity for such a formal document, and, whenever persons, without any necessity, go to such pains, it is difficult to avoid the impression that, possibly, evidence is being manufactured. In the Li Rocchi case, supra, we said:

"The fact that a notarial act was employed, where no formal document was necessary, in itself leads to the belief that there must have been some desire to prepare evidence to meet an impending demand."

With our attention still fixed upon this "act of sale", we remember that counsel for Mrs. White tell us to ignore that document because it does not evidence the sale which had, in fact, been made several months before without notarial assistance or sanctification. Of course, the date of the notarial document lends itself to a suggestion of suspicion because it was passed immediately after a threatened execution and on the very day on which execution might have been resorted to.

■ Added to these already suspicious circumstances is the fact of the relationship of the parties, for it is well recognized that, where such a transaction involves parties closely related to each other,

there is a suspicion of simulation. In Agricultural Supply Company, Inc., v. Lavigne et al., 179 La. 1030, 155 So. 764, 765, the Supreme Court, referring to the presumption of suspicion which results from the fact that there has been no delivery, which presumption is recognized by Article 2480 of the Civil Code, said that such presumption is strengthened "if the sale is made to a close relation of the seller" and in that case, also, the court held that there is also suspicion to be attached to the following circumstances: "If the seller is insolvent" and "if the price is said to have been paid in currency".

The insolvency of the vendor is, of course, as the Supreme Court said, always a suspicious circumstance, and that Mrs. Ashford was insolvent when this pretended sale was made is not disputed. Mrs. White herself gave the following testimony:

"Q. She (Mrs. Ashford) was insolvent? A. Yes, as far as I know."

Another most suspicious circumstance is the uncertainty of Mrs. White as to the amount of the mortgage which she says she assumed at the time she made the purchase of the furniture from Mrs. Ashford. A reading of her testimony shows plainly that she has no idea as to the amount of the mortgage which she says existed at that time.

Referring to such a circumstance, we, in Dugas v. Lewis-Chambers Construction Company, Inc., 187 So. 117, 120, said that "the variance and uncertainty as to what was the consideration * * * is a circumstance throwing further suspicion on the entire transaction".

■ We have no doubt whatever that there was no sale at all by which Mrs. White purchased the effects from Mrs. Ashford, and that that pretended transaction should be treated as a sham and simulation.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is reversed, and that there now be judgment setting aside the affidavit made by Mrs. Belle Giurard White, at her cost.

Reversed.