HOOD, Judge.
This is a suit for a partition by licitation of a tract of land, consisting of approximately 150 acres, located in Avoyelles Parish. The action was instituted by S. Thomas Burch against James T. Nichols and his five major children. James T. Nichols died! shortly after the suit was filed and his five children, who had already been named' as defendants, were properly substituted' as parties-defendant in his place and steadl
Plaintiff contends that he owns an um>divided one-half interest in and to this *714 tract of land, while defendants deny that he owns any interest in it. After trial of the case on its merits, the trial court concluded that plaintiff owned no interest in the land and accordingly judgment was rendered in favor of defendants, rejecting plaintiff’s demands for a partition. Plaintiff has appealed from that judgment.
The evidence establishes that James T. Nichols and Mrs. Brazzie Gelvin Crooks Nichols were married on September 5, 1940. At the time of that marriage Mr. Nichols owned an undivided one-half interest in and to the property here in dispute, and his five children, issue of a previous marriage, owned the remaining undivided one-half of such property.
On March 24, 1949, James T. Nichols executed a dation en paiement, in authentic form, purporting to convey to Mrs. Nichols his undivided one-half interest in and to such property. In this dation en paiement Mr. Nichols acknowledges that he was indebted to his wife for the sum of $3,500, which she had loaned or advanced to him from her separate funds, and that the transfer of his interest in this 150-acre tract of land was being made to her in payment of that debt.
A little more than four years after this dation en paiement was completed, Mrs. Nichols attempted to reconvey the same property back to her husband. She executed a deed on September 30, 1953, purporting to sell the property to James J. Vil-lemarette, and on the same day Villemarette executed a deed purporting to convey the same property to James T. Nichols. Both of these deeds were executed before the same notary and witnesses. Counsel for all parties agree that these two documents, dated September 30, 1953, constituted an attempt by a wife to sell immovable- property to her husband, through an interposed party, and that said deeds are null and-void, as being in violation of the prohibitions con-, tained in LSA-C.C. arts. 1790 and 2446. Although these instruments haW no legal effect, they :do -have some sigififRance in that they show that on that date Mr. and Mrs. Nichols intended for the title to this property to become vested in Mr. Nichols.
Mrs. Nichols died intestate on December 16, 1957, leaving plaintiff as her only child and heir-at-law. Plaintiff, therefore, inherited from his mother whatever interest she may have owned in this property. James T. Nichols died intestate on November 18, 1957, leaving the five defendants in this suit as his sole survivors and heirs-at-law.
Plaintiff, of course, is entitled to the judgment which he demands if the dation en paiement from Mr. Nichols to Mrs. Nichols, dated March 24, 1949, is valid. Defendants, however, have attacked the validity of that dation en paiement as being a simulation, contending that the transfer was made without consideration, there being no preexisting debt to support the transfer. The only issue presented on this appeal, therefore, is one of fact, that is, whether Mr. Nichols at the time the dation en paiement was executed was actually indebted to Mrs. Nichols for amounts which she loaned or advanced to him from her separate funds.
’ Defendants have sought to prove the non-existence of any such debt by parol evidence. The use of parol evidence to anul simulated contracts is specifically authorized hy Art. 2239 of the LSA-Civil Code, which provides:
“Art. 2239. Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to anul absolutely and by pa'rol' evidence the simulated contracts of those‘'from whom they inherit, and shall not be restricted to the legitimate (ligitime).”
In the recent case of Smith v. Smith, 1960, 239 La. 688, 119 So.2d 827, 829, the Supreme Court said:
“It"’ ;is 'well Settled 'that dations between husband and wife, being a spe- *715 cíes of sale (Articles 2655-2659, Civil Code), are exceptional contracts and are absolutely null unless they come within one of the permissible categories. Pelletier v. State Nat. Bank, 117 La. 335, 41 So. 640; Kelly v. Kelly, 131 La. 1024, 60 So. 671; Miller v. Miller, 234 La. 883, 102 So.2d 52. Since contracts between spouses are specifically forbidden by Articles 1790 and 2446 of the Civil Code, save for the three purposes detailed in Article 2446, it follows that any husband and wife who attempt to contract in violation of those restrictions do so in fraudem legis. If parol evidence is admissible to show fraud practiced on one of the contracting parties, it would, a fortiori, appear that it should be received when the fraud has been perpetrated on the law itself. And so this Court has held that parol evidence may be introduced to show that any obligation has been contracted in fraudem legis regardless of what form may have been given to the reprobated contract. Lazare v. Jacques, 15 La.Ann. 599; Kelly v. Kelly, supra; Ducote v. Stark, La.App., 87 So.2d 770.
“If Article 2236 were to be applied and parol evidence excluded in cases involving the absence of consideration in contracts between a husband and wife, the spouses could easily evade the restrictions of Article 2446 and make prohibited contracts with each other simply by using the authentic act to disguise the true circumstances. But such manipulations are not sanctioned in view of Articles 11 and 12 of the Civil Code: * *
 In an action attacking an authentic act as being a simulation, the burden of proof rests primarily upon the party making the attack to establish the facts upon which the alleged invalidity is based.. If one alleging a simulation, however, produces evidence of circumstances which .create highly reasonable doubts or suspicions as to the honesty of the transaction, a prima facie case is considered as having been made out, and the burden of proof is shifted to the party relying on the validity of that transaction to show that a valid sale existed. New Orleans Acid & Fertilizer Co. v. O. Guillory & Co., 117 La. 821, 42 So. 329; Leon Godchaux Co. v. Di Maggio, 133 La. 199, 62 So. 631; First National Bank of Ruston v. Jones,, 186 La. 269, 172 So. 155; Howard v. Howard, La. App., 96 So.2d 345; Smith v. Smith, supra.
Under the provisions of Article 2480 of the LSA-Civil Code, the mere fact that the seller remains in possession of the thing sold is sufficient to create a presumption that the sale is a simulation. Establishing that fact alone, especially when the transaction is between close relatives, ordinarily is sufficient to make out a prima facie case of simulation and thus shift the burden of proving that the transaction was genuine on the buyer. Succession of Dupre, 1951, 218 La. 907, 51 So.2d 317; Succession of Combre, 217 La. 955, 47 So. 2d 734; Dorsey v. Ashford, La.App.1941, 200 So. 176; Lejeune v. Cormier, La.App. 1951, 50 So.2d 482; Raines v. Lyons, La.App.1942, 6 So.2d 364; Miller v. Arnold, La.App.1955, 81 So.2d 181. McBride v. McBride, La.App.1960, 121 So.2d 353. While that rule may have no application here, since the grantor and grantee both remained in possession, it illustrates the nature of the proof which the redactors of the Civil Code felt should be sufficient to shift the burden of proof.
In Howard v. Howard, supra [96 So.2d 348], the Court of Appeal, Second Circuit, said:
“However, we point out the equally well recognized principle that the action ‘en declaration de simulation’ falls in a category of fraudulent conduct which, under our jurisprudence, is somewhat less demanding of, and less burdensome upon, the party who alleges the simulation.
*716 “In the first place, Article 2480 of our LSA-Civil Code establishes a presumption of simulation in all cases ■where the thing sold remains in the .■possession of the seller, and requires the parties to produce proof of good faith and to establish the reality of the sale.
“Second, the existence of suspicious circumstances, among which are to be considered the close relationship of the parties to the sale and the payment of the consideration in currency, are entitled to great weight, and the existence thereof may be accepted as evidence of the simulated character of the sale. Agricultural Supply Company, Inc. v. Lavigne, 179 La. 1030, 155 So. 764; Dorsey v. Ashford, La. App., 200 So. 176.”
In Smith v. Smith, supra, which involved a purported sale from a mother to her son, the Supreme Court said:
“This Court has recognized that simulation, because of its nature, can usually be proven only by indirect and circumstantial evidence (Summers & Bannin v. Clarke, 32 La.Ann. 670; King v. Atkins, 33 La.Ann. 1057; Succession of Dickson, 37 La.Ann. 795), so that, if one alleging a simulation produces evidence of circumstances which create highly reasonable doubts or suspicions as to- the honesty of the transaction, a prima facie case is considered as having been made out, and the burden of proof is shifted to the defendant to show that a valid sale existed.
* * * * 3f£ *
“Plaintiff brought out many other suspicious circumstances to indicate ithat the purported sale to Clova was a simulation, designed to defraud him of his rights. One was that the property at the time of the alleged sale •was worth much more than the $3,-■000.00 which was recited as a consideration in the deed.* Another was that the purported consideration was allegedly paid by Clova in currency, a circumstance that should always he viewed with suspicion in these cases. See Peyton v. Roth, 149 La. 147, 88 So. 773; Agricultural Supply Co. v. Lavigne, 179 La. 1030, 155 So. 764. However, the strongest circumstance presented was the close relationship of the parties to the deed along with proof that Mrs. Smith remained in possession of the property after deeding it to Clova.3 Once this fact was established, a presumption arose that the sale was a simulation, and the burden of proof shifted to defendants to show the validity of the transaction. Art. 2480 of the Civil Code; Cusimano v. Ferrara, 170 La. 1044, 129 So. 630; Agricultural Supply Co. v. Lavigne, 179 La. 1030, 155 So. 764.”
Since both parties to the dation en paiement were deceased at the time of the trial, the evidence which was produced was of an indirect and circumstantial nature. The evidence establishes, however, that the property sought to be partitioned here was purchased by Mr. Nichols several years prior to 1940, while he was married to his first wife who died in 1937. A residence was built on this property in 1933 or 1934, and Mr. Nichols occupied it as his home from the time it was built until his death. When Mrs. Brazzie Gel-vin Nichols married Mr. Nichols in 1940, she moved into this residence and she lived with Mr. Nichols on that property until her death.
The evidence further establishes that at the time Mr. Nichols married plaintiff’s mother, in 1940, he had approximately $1,-100 in cash, and several head of horses, cattle and pigs, in addition to a one-half interest in the property which is the subject of this litigation. From 1940 until his death he received some revenues from his live stock and from the sale of timber from the land, and he apparently received an old age pension for a portion of that time. His bank statements indicate that *717 from the time he married plaintiff’s mother until several months after the dation en paiement was executed he maintained a modest bank account, which never exceeded $1,000, and that he did not at any time during that period receive any relatively large sums of money.
Plaintiff points out that after Mr. Nichols married plaintiff’s mother in 1940 a number of improvements were made on the property which they occupied as a home. It is argued that the fact that these improvements were made, considered with Mr. Nichols’ acknowledgment that he was indebted to plaintiff’s mother for $3,500, is sufficient to justify a conclusion that these funds were obtained from Mrs. Nichols and were used to make the improvements. The improvements consisted of the installation of a bathroom in what was formerly a bedroom, the digging of a deep water well, the wiring of the house for electricity, the installation of a hot water tank, painting the house, adding concrete steps, planting shrubbery, the construction of a combination smoke and wash house, the digging of a cattle pond, building a cattle guard and repairing fences. The evidence indicates, however, that the installation of the bathroom, the digging of the well and the wiring of the house for electricity did not occur until 1952 or 1953, several years after the dation en paiement allegedly was made, and that these particular improvements were paid for or provided by some of the children of James T. Nichols, at no expense to him or his wife. All of the other improvements were of a minor nature, involving very little expense, and the evidence convinces us that Mr. Nichols had the funds with which to make them.
The property described in the dation en paiement was appraised at the sum of $3,-500 at the time that act was completed in 1949. The property was appraised at exactly the same figure in 1958, in connection with this suit for a partition. If the value of this property is correctly reflected by these appraisals, then it appears that the improvements which were made between those two dates did not have the effect of increasing the value of the property during that inflationary period. It appears to us that if the sum of $3,500 had been spent on improvements during that period there would have been some appreciation in value by 1958.
Plaintiff produced evidence establishing that shortly before his mother married Mr. Nichols in 1940, she sold her interest in a hotel and restaurant business in Columbia, Louisiana, and she also sold some tracts of land which she owned in the Parishes of LaSalle and Caldwell. The evidence does not show, however, how much she received from the sale of the hotel and restaurant business, if she received anything at all. It does show that in April, 1940, Mrs. Nichols executed two deeds conveying property which she owned in the Parishes of LaSalle and Caldwell to her son, who is the plaintiff in this suit, for a total recited consideration of $850. Plaintiff was unable to testify as to the amount which he paid to his mother for this property, although he stated that he paid her sums of money from time to time, all of which amounted to more than the price recited in the above mentioned deeds. No evidence was introduced as to the bank balances which may have been maintained by Mrs. Nichols, as to any deposits which she may have made or as to any loans or advances which she may have made to her husband. The evidence, in fact, does not show that Mrs. Nichols has ever owned or had funds in her possession amounting to as much as $3,500, or that Mr. Nichols ever received advances or a sum of money approaching that figure.
The trial judge concluded that the dation en paiement from Mr. Nichols to Mrs. Nichols, dated March 24, 1949, was null and void for lack of consideration. We find no error in that ruling. Defendants have produced proof of circumstances which create highly reasonable doubts or suspicions as to whether a debt existed to *718 support the dation en paiement. In our opinion, the evidence is sufficient to make out a prima facie case of simulation, so the burden of proof shifts to the plaintiff to show that a valid sale existed. Plaintiff has failed to establish that his ■ mother made any loans or advances to Mr. Nichols from her separate funds or that Mr. Nichols was indebted to her for any amounts whatsoever at the time the dation en paiement was executed. We conclude, therefore, that plaintiff has failed to meet the burden of proof which rests upon him, and that the trial court correctly rejected his demands.
For the reasons assigned, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.